[No. C060804. Third Dist. Jan. 14, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
TODD ROBERT DIXON, Defendant and Appellant.

## Counsel

Peggy A. Headley, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Janet E. Neeley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SCOTLAND, J.[*]—A jury convicted Todd Robert Dixon of pandering. (Pen. Code, § 266i, subd. (a)(2); further section references are to this code.) As was charged here, a person who "[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute" is guilty of pandering. (§ 266i, subd. (a)(2).)

Defendant's conviction was based on a text message he sent to 17-year-old L.N. that read, " 'U with me, 1 night, $200 or more.' " On appeal, defendant contends there was insufficient evidence to support his conviction because "a person who seeks sex for *himself*, and uses the money as an inducement, is not a panderer." We agree.

As California's Supreme Court has explained over 100 years ago in a similar context, a "pander[er]" is one " 'who procures the gratification of the passion of lewdness *for another.*' " (*People v. Roderigas* (1874) 49 Cal. 9, 11, italics added (hereafter *Roderigas*).) Since there was no evidence of that in this case, we shall reverse defendant's conviction.

In light of our conclusion, we need not address defendant's other claims of error.

### FACTS

Defendant was a family friend of L.N. In December 2007, when defendant was 39 or 40 years old, L.N. received a call from him on her cell phone. L.N. was 17 years old. Defendant asked if L.N. was alone because he wanted to discuss something private and personal. He then asked what she was doing for New Year's Eve. L.N. replied that she was babysitting her younger brother. Defendant asked whether she wanted to make a quick, easy $200. She responded, "[i]t depends," and asked if he wanted her to babysit his children. Defendant said that was possible but then started joking about the $200. Defendant ended the call by saying he would call back when it was "legit."

Fifteen minutes later, L.N. received a text message from defendant that read, " 'U with me, 1 night, $200 or more.' " One and a half to two hours later, L.N. received another text message that read, "[W]hat do you say?" L.N. concluded that defendant was not talking about babysitting and instead was wanting to be alone with her for "sexual intercourse or something like that."

---

[*]Retired Presiding Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

L.N. went home and showed the text messages to her parents. The next day, L.N. and her stepfather went to the police department. Using L.N.'s cell phone, a detective sent and received the following text messages:

"[Detective]: Ru there

"[Defendant]: Yes

"[Detective]: Thinkin bout wat u said . . . 2 nite?

"[Defendant]: Is tonight good for u

"[Detective]: Yeah . . . Im@my friends house. Wat we gonna do?

"[Defendant]: All get a room

"[Detective]: I can get a ride . . . I don't know wat 2 bring

"[Defendant]: Just u

"[Detective]: Do u have condoms? Mayb sum beer?

"[Defendant]: Sniped, beer yes

"[Detective]: Ok . . . Let me know where 2 go . . . My ride is here til ten.

"[Defendant]: What kind of beer

"[Detective]: Corona . . . Or whatever

"[Defendant]: Motel 6 rm 206 I can cum get u

"[Detective]: Wheres that . . . Here?

"[Defendant]: Harbor blvd W. Sac

"[Defendant]: U need ride

"[Detective]: My ride is gonna take me 2 bakers square . . . I'll let u know when I'm there

"[Defendant]: Where r u

"[Detective]: Leavin in a minute . . . I'm sorta nervous

"[Defendant]: Don't be it's just me

"[Detective]: I know . . . Ive never had sex with an older guy . . .

"[Defendant]: Relax hurry

"[Detective]: Im here by the office. Can you meet me here."

About 10:00 p.m. the same day, as defendant left room 206 carrying a beer, police stationed at the motel nabbed him. On his person, officers found a cell phone and $226. In the room, officers found beer and a toiletry kit containing "anal lube." In his truck, they found a rubber sex toy, a photo of a penis, 26 DVD's with legal adult pornography, and a portable DVD player.

## DISCUSSION

The sufficiency of evidence argument raised here is one of law. Does pandering require "simply offering money to someone in exchange for sex," as the People argue, or does it require more, namely, causing someone to become a prostitute to satisfy the desires of *another* person, as defendant argues?

■ The statute on pandering is silent on this issue. In relevant part, it states that a person who "[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute" is guilty of pandering. (§ 266i, subd. (a)(2).)

The instruction on pandering is similarly silent. (CALCRIM No. 1151.) As was given here, it required that (1) "The defendant used promises or any device or scheme to encourage L.N. to become a prostitute"; (2) "The defendant intended to influence L.N. to be a prostitute"; and (3) "L.N. was

over the age of 16 at the time the defendant acted." It defined prostitute as "a person who engages in sexual intercourse or any lewd act with another person in exchange for money."

■ However, case law from California's Supreme Court informs the issue. (*Roderigas, supra*, 49 Cal. at p. 11.) Roderigas was charged with violating section 266, which punishes "every person who, by any false pretenses, false representation, or other fraudulent means, procures any female to have illicit carnal connection with any man." The indictment alleged that he "procure[d] [a 16-year-old] female to have illicit carnal connection with himself . . . ." (*Roderigas, supra*, at pp. 9–10.) Roderigas argued the statute did not apply to him. The Supreme Court agreed, explaining: "To 'procure a female to have illicit carnal connection with any man,' is the offense of a procurer or procuress—of a pander." (*Roderigas, supra*, 49 Cal. at p. 11.) The "recognized meaning" of procure "refers to the act of a person 'who procures the gratification of the passion of lewdness for another.' This is its distinctive signification, as uniformly understood and applied." (*Ibid.*) In so recognizing, *Roderigas* specifically rejected the People's argument that, because "a seducer is a person who prevails upon a female . . . to have illicit carnal connection with himself, he is thereby brought within the mere words of the statute, and so made liable to the punishment it inflicts." (*Ibid.*) The Supreme Court stated, "this view cannot be maintained by any rule of fair interpretation." (*Ibid.*) Roderigas "cannot . . . be considered to have been both procurer and seducer at the same time, and in one and the same instance, without utterly confounding distinctions and definitions well established, and universally recognized." (*Ibid.*)[1]

■ The California Supreme Court's analysis of the meaning of "pander" is well reasoned and persuasive, and we follow it here. (See *Dyer v. Superior Court* (1997) 56 Cal.App.4th 61, 67 [65 Cal.Rptr.2d 85] ["dictum of the Supreme Court ' ". . . carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic" ' "].) The ordinary meaning of "pander" is to provide gratification for the desires of *others*. (Webster's 3d New Internat. Dict. (1993) p. 1629.) As to the sexual desires of others, "pandering" means the business of recruiting a prostitute, finding a place of business for a prostitute, or soliciting customers

---

[1] *Mathews v. Superior Court* (1981) 119 Cal.App.3d 309 [173 Cal.Rptr. 820] (hereafter *Mathews*), applied *Roderigas* and issued a writ of prohibition preventing further proceedings against Mathews under section 266. (*Mathews, supra*, at p. 312.) Mathews had snuck into a woman's bedroom pretending to be her lover and fondled her. The People charged him with violating section 266. This court held the charges "cannot stand. [Mathew's] conduct, reprehensible though it was, did not violate section 266. If there is a statutory oversight in this area of the penal law, the Legislature may address it." (119 Cal.App.3d at p. 312.)

for a prostitute. (Black's Law Dict. (7th ed. 1999) p. 1135; see *United States v. Williams* (2008) 553 U.S. 285, 308, fn. 1 [170 L.Ed.2d 650, 672, fn. 1, 128 S.Ct. 1830].)

■ Defendant does not meet the definition of a panderer. He sought to have sex with L.N. and offered her money to persuade her to do so. There is no evidence that he intended to have her become a prostitute for others.

Although the Supreme Court's decision in *Roderigas, supra*, 49 Cal. 9, is discussed at length by defendant, the People ignore the case completely and cite *Mathews, supra*, 119 Cal.App.3d 309, only in a footnote of their brief, stating nothing more than that the case "did not even involve an offer of payment for sex nor did it involve . . . section 266i." Instead, the People rely on a number of cases they contend stand for the proposition that pandering is "simply offering money to someone in exchange for sex." But those cases do not stand for that proposition. (See, e.g., *People v. Mathis* (1985) 173 Cal.App.3d 1251, 1255–1256 [219 Cal.Rptr. 693] [sufficient evidence of pandering, but reversal was required because the jury was incorrectly instructed that procuring could include merely assisting somebody to become a prostitute]; *People v. Patton* (1976) 63 Cal.App.3d 211, 215, 218 [133 Cal.Rptr. 533] [no defense to pandering that the woman whom the defendant solicited to work as a prostitute had already been one]; *People v. Fixler* (1976) 56 Cal.App.3d 321, 325 [128 Cal.Rptr. 363] [pandering applies to payment of wages to an actor or model who performs sexual acts with others in filming or photographing for publication], disapproved in *People v. Freeman* (1988) 46 Cal.3d 419, 428, fn. 6 [250 Cal.Rptr. 598, 758 P.2d 1128]; *People v. Bradshaw* (1973) 31 Cal.App.3d 421, 425–426 [107 Cal.Rptr. 256] [no defense to pandering that a defendant believed the woman he solicited to enter a house of prostitution under his supervision was already a prostitute who simply wanted "a new managerial arrangement"]; *People v. Lax* (1971) 20 Cal.App.3d 481, 483–487 [97 Cal.Rptr. 722] [pandering applied to a defendant who asked a woman to become a prostitute, promising her new clothes and an apartment]; *People v. Frey* (1964) 228 Cal.App.2d 33, 40, 50 [39 Cal.Rptr. 49] [pandering applied to a defendant who encouraged a prostitute to live in his hotel and received a share of her earnings].)

Unlike the cases the People cite, the evidence here established that defendant offered L.N. money to have sex only *with him.* As we have explained, under the rationale of *Roderigas, supra*, 49 Cal. at page 11, defendant's actions do not make him a panderer.

## DISPOSITION

The judgment is reversed.

Robie, Acting P. J., and Butz, J., concurred.

A petition for a rehearing was denied February 1, 2011, and respondent's petition for review by the Supreme Court was denied April 27, 2011, S190808.