HALLER, J.
*37 From 2013 through 2015, defendant Eliberto Cruz Jacobo, a middle-aged male, used a Facebook account with the fictional female persona of "Marlissa" to send "friend requests" to seven females under age 18, each of whom accepted Marlissa's request. Marlissa's Facebook profile page contained photographs of a scantily clad woman holding money. Using private messages through Facebook, Marlissa encouraged each of the minors to become prostitutes. Four of them eventually agreed and Marlissa arranged for each minor to have a "date" with Jacobo in exchange for money. At those dates, Jacobo took photographs and/or videos of the minors, had vaginal intercourse with them, and performed other sexual acts with them. Following a presentation on human trafficking at high school, two of the minors reported to their teachers their Facebook communications with Marlissa. A subsequent investigation by law enforcement officers showed Jacobo had used the Marlissa persona on Facebook to communicate with the seven minors and encourage them to become prostitutes. His laptop computer contained the photographs and videos he had taken of some of them. Jacobo was arrested and charged with various sex offenses.
At trial, the jury found Jacobo guilty of 60 sex offenses, including aggravated human trafficking ( *241 Pen. Code, § 236.1, subd. (c)(2) ),[1] contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a)), sending harmful matter to a minor (§ 288.2, subd. (a)), oral copulation with a person under age 18 (former § 288a, subd. (b)(1)), unlawful intercourse with a minor more than three years younger (§ 261.5, subd. (c)), sexual penetration with a person under age 18 (§ 289, subd. (h)), using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)), and unlawful intercourse with a minor under age 18 by a person over age 21 (§ 261.5, subd. (d)). The trial court sentenced him to an aggregate indeterminate term of 105 years to life in prison and a determinate term of 14 years 4 months.
On appeal, Jacobo contends:
(1) there is insufficient evidence to support his convictions for aggravated human trafficking ( § 236.1, subd. (c)(2) ) under a pandering theory because the evidence shows he intended to be the minors' sole client;
(2) there is insufficient evidence to support his convictions for aggravated human trafficking ( § 236.1, subd. (c)(2) ) under a pandering theory because the evidence does not show he used fraud or deceit;
*38 (3) there is insufficient evidence to support two of his convictions for using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)) because the photographs do not depict the required sexual conduct;
(4) there is insufficient evidence to support the remainder of his convictions for using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)) because he did not direct them to pose or model;
(5) his convictions for sending harmful matter to a minor (§ 288.2, subd. (a)) must be reversed because section 288.2, subdivision (a) violates the commerce clause of the United States Constitution;
(6) his convictions for sending harmful matter to a minor (§ 288.2, subd. (a)) must be reversed because section 288.2, subdivision (a) is overbroad and violates the First Amendment to the United States Constitution;
(7) six of his convictions for sending harmful material depicting a minor engaged in sexual conduct to a minor (§ 288.2, subd. (a)(1)) should be reduced to convictions for sending harmful material to a minor (§ 288.2, subd. (a)(2));
(8) his convictions for contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a)) must be reversed because section 288.3, subdivision (a) is unconstitutionally vague;
(9) his convictions for contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a)) must be reversed because section 288.3, subdivision (a) is overbroad and violates the First Amendment to the United States Constitution; and
(10) section 654 precludes his punishment for both his aggravated human trafficking offenses and his other offenses.
As we shall explain, we conclude six of his convictions for sending harmful material depicting a minor engaged in sexual conduct to a minor (§ 288.2, subd. (a)(1)) must be reduced to convictions for sending harmful material to a minor (§ 288.2, subd. (a)(2)). In all other respects, we affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
In November 2013, Jacobo, using the fictional female persona of Marlissa, sent *242 K.C., then 16 years old, a friend request on Facebook, which request K.C. then accepted. Through Facebook private messages, Marlissa asked K.C. how old she was and whether she wanted to make easy money. K.C. replied she was 17 years old. Marlissa explained to K.C. that *39 she was not talking about a regular job, but instead a job as an escort. Marlissa stated that K.C. could make $150 "tak[ing] care of a guy in bed." K.C. replied, "No thanks." Marlissa told K.C. to check her "timeline" on Facebook. K.C. did so and saw photographs of a scantily clad woman holding money. Marlissa continued to try to contact K.C. for several months, but K.C. did not respond except for a short reply in November 2014 stating that she was not doing much and asking what Marlissa was doing.
From June through August 2014, Jacobo, using the fictional persona of Marlissa, similarly communicated with 13-year-old A.M. through Facebook and attempted, albeit unsuccessfully, to persuade her to become a prostitute.[2] From April through July 2015, Jacobo, using the fictional persona of Marlissa, similarly communicated with 16-year-old Y.V. through Facebook and attempted, albeit unsuccessfully, to persuade her to become a prostitute.
In December 2013, Jacobo, using the fictional persona of Marlissa, similarly communicated with 16-year-old S.M. through Facebook and attempted to persuade her to become a prostitute. Marlissa stated that she was an escort, explaining that an escort "takes care of a guy in bed," and asked S.M. whether she wanted to be "hooked up" and make $150. After further prodding by Marlissa the following day, S.M. agreed. Marlissa told her, "Just be down boo. We only live once and nobody is going to know or find out." In January 2014, Marlissa asked S.M. if she would like to do the "hustle" before school for $150. S.M. told Marlissa to give the client her number and have him call her. Marlissa replied, "Go for it boo. We only live once and hustles are fun. Client and I are driving to hotel." Marlissa sent S.M. a photograph of Jacobo and told her that he lived nearby, would pay $150, and could be a steady customer.
Jacobo picked up S.M. in front of her school and took her to a motel room. He took a photograph of her there. Jacobo and S.M. had intercourse and then she orally copulated him and he orally copulated her.[3] Afterward, Jacobo paid S.M. $150. A few months later, Marlissa sent a message to S.M. stating, "[y]our client hit me up. He said for you to text him." S.M. never again met with Jacobo or any other client.
From June 2014 through August 2014, Jacobo, using the fictional persona of Marlissa, similarly communicated with 16-year-old G.M. through Facebook and attempted to persuade her to become a prostitute. After initially declining, G.M. ultimately agreed after additional prodding by Marlissa. Jacobo *40 picked up G.M. at her home, took her to a motel room, paid her $150, and had sexual intercourse with her. He took sexually explicit photographs of G.M. and two video recordings of them engaging in oral copulation and vaginal intercourse. After that "date," Marlissa continued to ask G.M. whether she wanted to do another trick with Jacobo, but G.M. declined.
From June 2013 through July 2014, Jacobo, using the fictional persona of Marlissa, similarly communicated with 14-year-old *243 Y.C. through Facebook and attempted to persuade her to become a prostitute. Y.C. agreed because her parents were "broke" and she was taking care of herself. Marlissa arranged a "date" with Jacobo, who picked her up and took her to a motel room where they had sexual intercourse. Jacobo took sexually explicit photographs of Y.C. and video recordings of them engaging in sexual intercourse. In the following months, Marlissa sent Y.C. messages encouraging her to contact Jacobo again, but Y.C. replied that she was no longer interested.
From May 2014 through February 2015, Jacobo, using the fictional persona of Marlissa, similarly communicated with 16-year-old A.C. through Facebook and attempted to persuade her to become a prostitute. Marlissa arranged for Jacobo to pick up A.C. at her high school. He took her to a motel room, but, rather than having sex with him, A.C. robbed him at knife point and walked home. Thereafter, Marlissa complained to A.C. about her robbing Jacobo and told her she should finish the trick, promising her a lucrative trip to San Diego. After A.C. agreed, Jacobo took her to a motel room where they had sexual intercourse and he took sexually explicit photographs of her and video recordings of them. Thereafter, A.C. met with Jacobo an additional time, but Marlissa never arranged any additional clients for her.
After attending high school presentations on human trafficking, K.C. and Y.V. each spoke with their teachers about communications they had with Marlissa through Facebook. Thereafter, they spoke with Riverside County Deputy Sheriff Daniel Engels about their communications with Marlissa. Engels obtained a search warrant for Marlissa's Facebook account and found 8,033 pages of records for that account. That account led Engels to an internet account belonging to Jacobo. A subsequent search of Jacobo's home located a laptop computer that contained Marlissa's Facebook profile photograph. That photograph was of a woman, Claudia A., with whom Jacobo regularly had sex for money. She was unaware that Jacobo had used photographs of her under the name Marlissa. Jacobo's laptop computer also contained sexually explicit photographs of other females, including the minors described ante with whom he had sex.
A third amended information charged Jacobo with seven counts of aggravated human trafficking by fraud or deceit ( § 236.1, subd. (c)(2) ) and 55 other *41 sexual offenses. After two counts were dismissed on the prosecution's motion, a jury found Jacobo guilty on 60 counts, including seven counts of aggravated human trafficking by fraud or deceit ( § 236.1, subd. (c)(2) ), 10 counts of contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a)), six counts of sending harmful material depicting a minor to a minor (§ 288.2, subd. (a)(1)), five counts of sending harmful material to a minor (§ 288.2, subd. (a)(2)), five counts of oral copulation with a person under age 18 (former § 288a, subd. (b)(1)), three counts of unlawful intercourse with a minor more than three years younger (§ 261.5, subd. (c)), two counts of sexual penetration with a person under age 18 (§ 289, subd. (h)), 21 counts of using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)), and one count of unlawful intercourse with a minor under age 18 by a person over age 21 (§ 261.5, subd. (d)). The trial court sentenced Jacobo to consecutive terms of 15 years to life in prison for each of the seven aggravated human trafficking counts, for an aggregate indeterminate term of 105 years to life, and an aggregate determinate term of 14 years 4 months. Jacobo timely filed a notice of appeal. *244 DISCUSSION
I
Substantial Evidence to Support Jacobo's Convictions for Aggravated Human Trafficking under a Pandering Theory
Jacobo contends there is insufficient evidence to support his convictions of section 236.1, subdivision (c)(2) aggravated human trafficking (hereinafter section 236.1(c)(2) ), under a pandering theory because the evidence shows he intended to be the minors' sole client. In particular, he argues pandering requires that the panderer intend to procure another person for a third person and not just for the panderer.
A
When reviewing a trial court's denial of a section 1118.1 motion for acquittal, we apply the substantial evidence standard of review. ( People v. Roldan (2011) 197 Cal.App.4th 920, 924, 129 Cal.Rptr.3d 45.) Likewise, when a conviction is challenged on appeal for insufficient evidence to support it, we apply the substantial evidence standard of review. ( People v. Vines (2011) 51 Cal.4th 830, 869, 124 Cal.Rptr.3d 830, 251 P.3d 943 ( Vines ); People v. Johnson (1980) 26 Cal.3d 557, 578, 162 Cal.Rptr. 431, 606 P.2d 738 ( Johnson I ).) In applying that substantial evidence standard, we review the whole record in the light most favorable to the judgment to determine *42 whether there is substantial evidence to support the conviction. ( Vines , at p. 869, 124 Cal.Rptr.3d 830, 251 P.3d 943 ; Johnson I , at p. 578, 162 Cal.Rptr. 431, 606 P.2d 738.) Substantial evidence is evidence that is reasonable, credible, and of solid value such that a rational trier of fact could find the defendant guilty beyond a reasonable doubt. ( People v. Killebrew (2002) 103 Cal.App.4th 644, 660, 126 Cal.Rptr.2d 876.) We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. ( People v. Cochran (2002) 103 Cal.App.4th 8, 13, 126 Cal.Rptr.2d 416.)
B
The proper interpretation of a statute is a question of law, which we determine independently, or de novo. ( People ex rel. Lockyer v. Shamrock Foods Co. (2000) 24 Cal.4th 415, 432, 101 Cal.Rptr.2d 200, 11 P.3d 956.) The fundamental purpose of statutory interpretation is to ascertain the intent of the Legislature in enacting the statute. ( People v. Cornett (2012) 53 Cal.4th 1261, 1265, 139 Cal.Rptr.3d 837, 274 P.3d 456 ( Cornett ); People v. Farley (2009) 46 Cal.4th 1053, 1118, 96 Cal.Rptr.3d 191, 210 P.3d 361.) We begin by considering the actual language of the statute, giving its words their usual and ordinary meaning. ( Cornett , at p. 1265, 139 Cal.Rptr.3d 837, 274 P.3d 456 ; Alcala v. Superior Court (2008) 43 Cal.4th 1205, 1216, 78 Cal.Rptr.3d 272, 185 P.3d 708 ( Alcala ); Robert L. v. Superior Court (2003) 30 Cal.4th 894, 901, 135 Cal.Rptr.2d 30, 69 P.3d 951 ( Robert L. ).) We construe the words of a statute as a whole and within the overall statutory scheme to effectuate the intent of the Legislature. ( Robert L. , at p. 901, 135 Cal.Rptr.2d 30, 69 P.3d 951.) If the words of the statute are unambiguous, the plain meaning of the statute governs and there is no need for construction. ( Cornett , at p. 1265, 139 Cal.Rptr.3d 837, 274 P.3d 456 ; People v. Johnson (2013) 57 Cal.4th 250, 260, 159 Cal.Rptr.3d 70, 303 P.3d 379 ( Johnson II ); People v. Hendrix (1997) 16 Cal.4th 508, 512, 66 Cal.Rptr.2d 431, 941 P.2d 64 ( Hendrix ).) However, if the statutory language is ambiguous, we look to other indicia of the intent of the Legislature. ( Cornett , at p. 1265, 139 Cal.Rptr.3d 837, 274 P.3d 456 ; People v. Floyd (2003) 31 Cal.4th 179, 187-188, 1 Cal.Rptr.3d 885, 72 P.3d 820.) Those *245 other indicia may include the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. ( Cornett , at p. 1265, 139 Cal.Rptr.3d 837, 274 P.3d 456.) We do not interpret ambiguities in statutory or initiative language in a defendant's favor if that interpretation would create an absurd result or be inconsistent with the intent of the Legislature. ( People v. Cruz (1996) 13 Cal.4th 764, 782-783, 55 Cal.Rptr.2d 117, 919 P.2d 731.)
C
Jacobo was charged with and convicted on seven counts of aggravated human trafficking under section 236.1(c)(2), which provides in pertinent part:
*43 "A person who causes, induces, or persuades, or attempts to cause, induce, or persuade , a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of Section ... 266i ... is guilty of human trafficking. A violation of this subdivision is punishable by imprisonment in the state prison as follows:
"(1) Five, 8, or 12 years and a fine of not more than five hundred thousand dollars ($500,000).
"(2) Fifteen years to life and a fine of not more than five hundred thousand dollars ($500,000) when the offense involves force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person." (Italics added.)
Section 236.1, subdivision (h)(2) defines the phrase "commercial sex act" as meaning "sexual conduct on account of which anything of value is given or received by a person."
The offense of pandering under section 266i consists of any of the six listed acts described in section 266i, subdivisions (a)(1) through (a)(6). Section 266i was originally enacted in 1953 (Stats. 1953, ch. 32, § 4, p. 635) and now provides:
"(a) Except as provided in subdivision (b), any person who does any of the following is guilty of pandering , a felony, and shall be punishable by imprisonment in the state prison for three, four, or six years:
"(1) Procures another person for the purpose of prostitution.
"(2) By promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute.
"(3) Procures for another person a place as an inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state.
"(4) By promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages an inmate of a house of prostitution, or any other place in which prostitution is encouraged or allowed, to remain therein as an inmate.
"(5) By fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procures another person for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution.
"(6) Receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, another person for the purpose *44 of prostitution, or to come into this state *246 or leave this state for the purpose of prostitution."[4] (Italics added.)
Under section 266i, subdivision (a)(2) (hereinafter section 266i(a)(2)), persuading or encouraging another person "to become a prostitute" includes "recruiting someone to enter the prostitution trade for the first time." ( People v. Zambia (2011) 51 Cal.4th 965, 973, 127 Cal.Rptr.3d 662, 254 P.3d 965 ( Zambia ).)
D
After the prosecution completed its case in chief, Jacobo filed a section 1118.1 motion for acquittal on the seven section 236.1(c)(2) aggravated human trafficking charges on the ground that there was insufficient evidence to support a finding that he intended to pander the minors for purposes of prostitution with other men and not solely himself. The trial court denied Jacobo's section 1118.1 motion for acquittal. In closing, the prosecution argued that Jacobo was guilty of section 236.1(c)(2) aggravated human trafficking under the section 266i(a)(2) theory of pandering, and the court instructed the jury thereon with CALCRIM No. 1151 that the prosecution must prove "[Jacobo] used promises or any device or scheme to cause, persuade, encourage, induce [the seven alleged victims] to become a prostitute, although the defendant's efforts need not have been successful ...."[5] The jury was further instructed that "[a] prostitute is a person who engages in sexual intercourse or any lewd act with another person in exchange for money or other compensation."
E
Contrary to Jacobo's assertion, pandering under section 266i(a)(2) does not require that the panderer intend to procure another person (i.e., the victim) for a third person. As quoted ante , section 266i(a)(2) provides that one form of pandering is committed when a person "by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute. " (Italics added.) That statutory language does not contain any reference to a third person. Rather, under the plain meaning of its language, section 266i(a)(2) provides that pandering can be committed when only two persons are involved-namely, the panderer and the victim who the panderer persuades or encourages to become a prostitute. Giving the words of section 266i(a)(2) their usual and ordinary meaning and construing section 266i as a whole, we conclude the words of section 266i(a)(2) are unambiguous and *45 therefore their plain meaning governs and no further construction of that statute is required. ( Cornett , supra , 53 Cal.4th at p. 1265, 139 Cal.Rptr.3d 837, 274 P.3d 456 ; Alcala , supra , 43 Cal.4th at p. 1216, 78 Cal.Rptr.3d 272, 185 P.3d 708 ; Robert L. , supra , 30 Cal.4th at p. 901, 135 Cal.Rptr.2d 30, 69 P.3d 951 ; Johnson II , supra , 57 Cal.4th at p. 260, 159 Cal.Rptr.3d 70, 303 P.3d 379 ; Hendrix , supra , 16 Cal.4th at p. 512, 66 Cal.Rptr.2d 431, 941 P.2d 64.)
Given that plain meaning of the words of section 266i(a)(2), we conclude that if a panderer persuades or encourages the victim to become a person who engages in sexual intercourse or any lewd act with the panderer in exchange for money, *247 the panderer can be found guilty of section 266i(a)(2) pandering even if the panderer intended to persuade or encourage the victim to engage in sexual intercourse or any lewd act for money solely with him or her and not any third person. As the People suggest, the Legislature could reasonably believe that the offense of section 266i(a)(2) pandering should apply to both those panderers who lure victims to become prostitutes for others as well as those panderers who lure victims to become prostitutes solely for their own sexual gratification. Zambia , supra , 51 Cal.4th 965, 127 Cal.Rptr.3d 662, 254 P.3d 965, cited by Jacobo, addressed the question of whether the offense of pandering under section 266i(a)(2) can include the encouragement of a currently active prostitute to work instead for the panderer. ( Id. at pp. 970-971, 981, 127 Cal.Rptr.3d 662, 254 P.3d 965.) Therefore, Zambia is factually and legally inapposite to this case and does not persuade us to reach a contrary conclusion.
Although Jacobo cites People v. Roderigas (1874) 49 Cal. 9 ( Roderigas ) as authority showing California requires a third person for the offense of pandering, that case is inapposite because it dealt with a statute (§ 266), which was originally enacted in 1872 and had different language from section 266i, which was not enacted until 1953. In Roderigas , the court construed the language of section 266, which provided that a person who "procures any female to have illicit carnal connection with any man" was guilty of pandering under section 266. ( Id. at p. 11.) Focusing on the word "procures," Roderigas stated that its use in section 266 "refers to the act of a person 'who procures the gratification of the passion of lewdness for another.' " ( Ibid. ) The court concluded that "[t]o 'procure a female to have illicit carnal connection with any man,' is the offense of a procurer or procuress-of a pander. This is the natural meaning of the words-the fair import of the terms of the statute ...." ( Ibid. ) Roderigas rejected the People's argument that section 266 pandering included a seducer's procurement of a theretofore chaste female to have illicit carnal connection with himself. ( Ibid. ) It concluded that the defendant cannot "be considered to have been both procurer and seducer at the same time." ( Ibid. )
Assuming arguendo that Roderigas 's holding remains valid today regarding its construction of the term "procure" in the current version of *46 section 266,[6] we are not bound by its construction of section 266 pandering in this case because Jacobo was not charged with, nor convicted of, section 266 pandering. On the contrary, he was convicted of section 236.1(c)(2) aggravated human trafficking under the theory of section 266i(a)(2) pandering, which statute does not use the term "procure" nor does it expressly require the procurement of a female to have an illicit carnal connection "with any man" as section 266 requires. Therefore, Roderigas 's interpretation of the 1874 version of section 266 pandering does not control our interpretation of the current version of section 266i(a)(2) pandering. *248 To the extent Jacobo argues Roderigas 's interpretation of the offense of "pandering" under section 266 controls all subsequently-enacted statutes defining offenses of "pandering" (e.g., § 266i(a)(2)) regardless of their different language, we reject that argument as one based on an ill-founded attempt to create or enforce common law crimes.
In California, there are no common law crimes. ( People v. Smith (1997) 57 Cal.App.4th 1470, 1480, 67 Cal.Rptr.2d 604.) Rather, "subject to the constitutional prohibition against cruel and unusual punishment, the power to define crimes and fix penalties is vested exclusively in the legislative branch." ( Keeler v. Superior Court (1970) 2 Cal.3d 619, 631, 87 Cal.Rptr. 481, 470 P.2d 617.) Accordingly, it is the Legislature through its enactments of criminal statutes, and not a court through common law decisions, that decides what acts constitute criminal offenses. Therefore, we reject Jacobo's apparent assertion that Roderigas established a binding common law principle of what an offense of pandering can, and cannot, constitute.
Because the Legislature in 1953 enacted a new statute, namely section 266i, that defines six variants of the offense of "pandering," we are not bound, nor are we persuaded, by Roderigas 's interpretation of the offense of pandering under section 266 in interpreting the language of section 266i(a)(2) in this case. Accordingly, as discussed ante , we conclude the plain meaning of the words of section 266i(a)(2) do not require a third person for its offense of pandering to be committed. Contrary to Roderigas 's conclusion regarding section 266, under section 266i(a)(2) Jacobo can be "both procurer [or panderer] and seducer at the same time" and thereby commit the offense of pandering under that statute. (Cf. Roderigas , supra , 49 Cal. at p. 11.)
*47 Although Jacobo also cites People v. Dixon (2011) 191 Cal.App.4th 1154, 119 Cal.Rptr.3d 901 in support of his argument that section 266i(a)(2) requires a third person for the offense of pandering, we are not bound by Dixon 's holding and disagree with its reasoning. Citing Roderigas , as well as common dictionary definitions of "pandering," Dixon concluded that section 266i(a)(2) pandering requires that a panderer procure the gratification of the passion of lewdness of a prostitute for another (i.e., a third person). ( Dixon , at pp. 1156, 1159-1160, 119 Cal.Rptr.3d 901.) Accordingly, Dixon reversed the defendant's conviction for pandering under section 266i(a)(2) because he offered the victim money to have sex only with him. ( Id. at p. 1160, 119 Cal.Rptr.3d 901.) However, Dixon 's reasoning omitted an analysis of the plain meaning of the words of section 266i(a)(2) and, in effect, relied on Roderigas 's common law definition of the offense of pandering. Moreover, to the extent Dixon considered the actual language of section 266i(a)(2), it observed that its language "is silent on [the] issue" of whether a third person is required for its defined offense of pandering. ( Dixon , at p. 1158, 119 Cal.Rptr.3d 901.) In our view, that "silence" supports our conclusion that section 266i(a)(2) can be committed without a third person. If the Legislature had intended to require the persuasion or encouragement of another person (i.e., a victim) to become a prostitute for a third person, it presumably would have expressly included that third person requirement within the plain language of that statute. Because it did not, we infer it did not intend to include such a requirement in its definition of section 266i(a)(2) pandering. We are unpersuaded by Dixon 's reasoning and reject its conclusion that section 266i(a)(2) requires a third person to commit the offense of pandering.
*249 Jacobo does not dispute, and based on our review of the record we conclude, that there is substantial evidence to support a finding that he persuaded, or attempted to persuade, each of the seven minors in this case to engage in a commercial sex act with the intent to persuade or encourage them to become a prostitute with only himself, which under our interpretation of the plain language of section 266i(a)(2) constitutes the offense of pandering. Accordingly, we conclude there is substantial evidence to support Jacobo's seven convictions of aggravated human trafficking ( § 236.1(c)(2) ). Therefore, the trial court correctly denied his section 1118.1 motion for acquittal on the seven section 236.1(c)(2) aggravated human trafficking charges.
II**
*48 III
Substantial Evidence to Support Two of Jacobo's Section 311.4, Subdivision (c) Convictions
Jacobo contends there is insufficient evidence to support two of his convictions (counts 23 and 61) for using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)) because the underlying photographs do not depict the required sexual conduct. In particular, he argues the photographs do not show an improper exhibition of the minor's genital or pubic areas per section 311.4, subdivision (d)(1).
A
Counts 23 (victim G.M.) and 61 (victim Y.C.) charged Jacobo with using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)). Section 311.4, subdivision (c) provides:
"Every person who, with knowledge that a person is a minor under the age of 18 years, or who, while in possession of any facts on the basis of which he or she should reasonably know that the person is a minor under the age of 18 years, knowingly promotes, employs, uses, persuades, induces, or coerces a minor under the age of 18 years ... to engage in or assist others to engage in either posing or modeling alone or with others for purposes of preparing any representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film, filmstrip, or a live performance involving, sexual conduct by a minor under the age of 18 years alone or with other persons or animals, is guilty of a felony...." (Italics added.)
For purposes of section 311.4, subdivision (c), the term "sexual conduct" means "any of the following, whether actual or simulated: sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd or lascivious manner, exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer , any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner, ... An act is simulated when it gives the appearance of being sexual conduct." (§ 311.4, subd. (d)(1), italics added.)
*250 In People v. Kongs (1994) 30 Cal.App.4th 1741, 37 Cal.Rptr.2d 327 ( Kongs ), the court addressed the questions of whether the defendant in that case used or induced a minor to pose for purposes of preparing a film or *49 photograph involving sexual conduct and whether there was sufficient evidence of exhibition of the genitals, pubic, or rectal area for the purpose of sexual stimulation of the viewer. ( Id. at p. 1753, 37 Cal.Rptr.2d 327.) In that case, the defendant argued there was insufficient sexual conduct because the genitals of the minor as shown in the photographs were covered. ( Ibid. ) First, Kongs concluded that a nude image of a minor's genitals is not required for a section 311.4, subdivision (c) offense. ( Ibid. ) Second, Kongs set forth the following six factors for a trier of fact to consider in determining whether a photograph or other image is an "exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer" within the meaning of section 311.4, subdivision (d)(1):
"1) whether the focal point is on the child's genitalia or pubic area;
"2) whether the setting is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
"3) whether the child is in an unnatural pose, or in inappropriate attire, considering the age of the child;
"4) whether the child is fully or partially clothed, or nude;
"5) whether the child's conduct suggests sexual coyness or a willingness to engage in sexual activity;
"6) whether the conduct is intended or designed to elicit a sexual response in the viewer." ( Kongs , supra , 30 Cal.App.4th at pp. 1754-1755, 37 Cal.Rptr.2d 327.)
Kongs stated that only the sixth factor is required for a finding of "sexual conduct" under section 311.4, subdivisions (c) and (d). ( Kongs , supra , 30 Cal.App.4th at p. 1755, 37 Cal.Rptr.2d 327.) The first five factors are simply other circumstances that the trier of fact may consider in determining whether there is such "sexual conduct." ( Ibid. ) Kongs stated, "[T]he determination [regarding whether there is sexual conduct under section 311.4, subdivision (c) ] must be made based on the overall content of the visual depiction and the context of the child's conduct, taking into account the child's age." ( Kongs , at p. 1755, 37 Cal.Rptr.2d 327.)
B
Contrary to Jacobo's assertion, we conclude there is substantial evidence to support findings by the jury that the photographs of G.M. (exh. 40) and Y.C. (exh. 69) depicted sexual conduct by those minors within the meaning of section 311.4, subdivisions (c) and (d)(1). We have viewed the photograph of G.M. in exhibit 40, which was admitted to prove count 23. That photograph shows G.M., who was then a 16-year-old minor, topless with *50 her breasts exposed, wearing a thong bikini, and reaching for a penis, which is presumably Jacobo's. Although the primary focal point of the photograph may not have been G.M.'s genitals or pubic area, which was at least partially obscured by her arm, the setting and her pose, attire, and conduct shown in the photograph supports a reasonable inference that she was preparing for either sexual intercourse or another lewd act with Jacobo. Many of the six Kongs factors support a finding that the photograph of G.M. is an "exhibition of the genitals or pubic ... area for the purpose of sexual stimulation of the viewer" within the meaning of section 311.4, subdivision (d)(1). ( Kongs , supra , 30 Cal.App.4th at pp. 1754-1755, 37 Cal.Rptr.2d 327.)
A trier of fact could reasonably view the photograph as depicting part of her genitals *251 or pubic area (i.e., that part not obscured by her arm), albeit covered mostly by her thong bikini, and possibly showing pubic hairs. A trier of fact also could reasonably find that the setting is sexually suggestive as the photograph shows G.M. standing and leaning over a bed. A trier of fact also could reasonably find that her pose was unnatural and her attire was inappropriate for a 16-year-old. G.M. was only partially clothed, wearing only a thong bikini. Her conduct suggests her willingness to engage in sexual activity. Finally, a trier of fact could reasonably find that the conduct depicted in the photograph was intended to elicit a sexual response in the viewer.
Based on our consideration of the six *51 Kongs factors, we conclude there is substantial evidence to support the jury's findings that the photograph in exhibit 40 exhibited G.M.'s genitals or pubic area for the purpose of sexual stimulation of the viewer within the meaning of section 311.4, subdivision (d)(1) and therefore involved sexual conduct within the meaning of section 311.4, subdivision (c). ( Kongs , supra , 30 Cal.App.4th at pp. 1754-1755, 37 Cal.Rptr.2d 327 ; cf. People v. Spurlock (2003) 114 Cal.App.4th 1122, 1128, 1133-1134, 8 Cal.Rptr.3d 372 ( Spurlock ) [substantial evidence supports finding of section 311.4, subdivision (c) sexual conduct where photograph of 15-year-old girl shows her in bra and underpants, sitting on floor with legs splayed]; United States v. Knox (3d Cir. 1994) 32 F.3d 733, 746, 754 ( Knox ) [videotapes of minors that zoomed in on their clothed genital areas constituted lascivious exhibition of genitals or pubic area under federal statute].) Accordingly, there is substantial evidence to support Jacobo's conviction on count 23. To the extent Jacobo argues the photograph could be viewed to support a contrary conclusion, he misconstrues and/or misapplies the substantial evidence standard of review. ( Vines , supra , 51 Cal.4th at p. 869, 124 Cal.Rptr.3d 830, 251 P.3d 943 ; Johnson I , supra , 26 Cal.3d at p. 578, 162 Cal.Rptr. 431, 606 P.2d 738.)
Regarding count 61, we have viewed the photograph of Y.C. in exhibit 69. That photograph shows Y.C., who was then a 14-year-old minor, in a reclined pose on a bed, facing the camera, and smiling. She is wearing bikini underwear and pulling up her bra to expose her breasts. Applying the six Kongs factors, we conclude there is substantial evidence to support a finding that the photograph in exhibit 69 exhibited Y.C.'s genitals or pubic area for the purpose of sexual stimulation of the viewer within the meaning of section 311.4, subdivision (d)(1). A trier of fact could reasonably view the photograph as depicting her genitals or pubic area, albeit covered by her bikini underwear, which was possibly a focal point of the photograph. A trier of fact also could reasonably find that the setting is sexually suggestive as the photograph shows Y.C. reclined on a bed. A trier of fact also could reasonably find that her pose was unnatural and her attire was inappropriate for a 14 year old. Y.C. was smiling and only partially clothed, wearing bikini underwear and a bra that she pulled up to expose her breasts. Her conduct suggests her willingness to engage in sexual activity. Finally, a trier of fact could reasonably find that the conduct depicted in the photograph was intended to elicit a sexual response in the viewer.
Based on our consideration of the six Kongs factors, we conclude there is substantial evidence to support the jury's findings that the photograph in exhibit 69 exhibited Y.C.'s genitals or pubic area for the purpose of sexual stimulation of the viewer within the meaning of section 311.4, subdivision (d)(1) and therefore involved sexual conduct within the meaning of section *252 311.4, subdivision (c). ( Kongs , supra , 30 Cal.App.4th at pp. 1754-1755, 37 Cal.Rptr.2d 327 ; cf. Spurlock , supra , 114 Cal.App.4th at pp. 1128, 1133-1134, 8 Cal.Rptr.3d 372 ; Knox , supra , 32 F.3d at pp. 746, 754.) Accordingly, there is substantial evidence to support Jacobo's conviction on count 61. To the extent Jacobo argues the photograph could be viewed to support a contrary conclusion, he misconstrues and/or misapplies the substantial evidence standard of review. ( Vines , supra , 51 Cal.4th at p. 869, 124 Cal.Rptr.3d 830, 251 P.3d 943 ; Johnson I , supra , 26 Cal.3d at p. 578, 162 Cal.Rptr. 431, 606 P.2d 738.)
IV-IX***
X
Section 654
Jacobo contends section 654 precludes his punishment for both his aggravated human trafficking offenses committed against four of the minors and the sex offenses he committed against those four minors. He argues that because those sex offenses were committed as part of the same indivisible course of conduct with the same objective as the aggravated human trafficking offenses committed against those four minors, section 654 bars punishment for both and the sentences for those sex offenses must be stayed.
*52 A
The trial court sentenced Jacobo to 15 years to life in prison for his conviction for aggravated human trafficking committed against G.M. (count 18). The court also imposed sentences for the sex offenses he committed against G.M.: (1) a consecutive term of eight months for oral copulation (count 19); (2) a concurrent term of two years for unlawful sexual intercourse (count 20); and (3) a concurrent term of two years for sexual penetration (count 21).
The trial court sentenced Jacobo to 15 years to life in prison for his conviction for aggravated human trafficking committed against A.C. (count 29). The court also imposed sentences for the sex offenses he committed against A.C.: (1) a consecutive term of eight months for oral copulation committed on June 17, 2014 (count 30); and (2) a consecutive term of eight months for oral copulation committed on July 26, 2014 (count 31).
The trial court sentenced Jacobo to 15 years to life in prison for his conviction for aggravated human trafficking committed against S.M. (count 38). The court also imposed sentences for the sex offenses he committed against S.M.: (1) a consecutive term of eight months for unlawful sexual intercourse (count 39); (2) a concurrent term of two years for each of three convictions for oral copulation (counts 40-42); and (3) a concurrent term of two years for sexual penetration of a minor (count 43).
The trial court sentenced Jacobo to 15 years to life in prison for his conviction for aggravated human trafficking committed against Y.C. (count 56). The court also imposed a consecutive term of one year for unlawful sexual intercourse committed against Y.C. (count 57).
B
Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished *53 under more than *253 one provision. " (Italics added.) Section 654 prohibits only multiple punishment, not multiple convictions, for the same act. ( People v. Britt (2004) 32 Cal.4th 944, 951, 12 Cal.Rptr.3d 66, 87 P.3d 812 ( Britt ).)
The California Supreme Court has stated, "The test for determining whether section 654 prohibits multiple punishment has long been established: 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.] A decade ago, we criticized this test but also reaffirmed it as the established law of this state. [Citation.] We noted, however, that cases have sometimes found separate objectives when the objectives were either (1) consecutive even if similar or (2) different even if simultaneous. In those cases, multiple punishment was permitted. [Citation.] ... [¶] Section 654 turns on the defendant's objective in violating both provisions ...." ( People v. Britt , supra , 32 Cal.4th at pp. 951-952, 12 Cal.Rptr.3d 66, 87 P.3d 812.)
Importantly, under section 654 "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." ( People v. Beamon (1973) 8 Cal.3d 625, 639, fn. 11, 105 Cal.Rptr. 681, 504 P.2d 905 ( Beamon ).) Therefore, "[i]f the offenses were committed on different occasions, they may be punished separately." ( People v. Kwok (1998) 63 Cal.App.4th 1236, 1253, 75 Cal.Rptr.2d 40 ( Kwok ).) "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken." ( People v. Gaio (2000) 81 Cal.App.4th 919, 935, 97 Cal.Rptr.2d 392 ( Gaio ).)
In cases involving sex offenses, "[e]ven where the defendant has but one objective-sexual gratification-section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished. [Citations.] [¶] [S]ection 654 does not apply to sexual misconduct that is 'preparatory' in the general sense that it is designed to sexually arouse the perpetrator or the victim." ( People v. Alvarez (2009) 178 Cal.App.4th 999, 1006, 101 Cal.Rptr.3d 169 ( Alvarez ).)
"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the *54 existence of every fact the trial court could reasonably deduce from the evidence." ( People v. Jones (2002) 103 Cal.App.4th 1139, 1143, 127 Cal.Rptr.2d 319 ( Jones ).)
C
At sentencing, the trial court implicitly concluded section 654 did not apply to any of Jacobo's offenses. By imposing consecutive or concurrent terms for all of the sex offenses he committed against each of the four minors (G.M., A.C., S.M., and Y.C.), the trial court implicitly found Jacobo had a separate intent and objective in committing those offenses from his intent and objective in committing the aggravated human trafficking offenses against those four minors. Based on our review of the record, we conclude there is substantial *254 evidence to support the court's conclusion that section 654 did not apply to bar multiple punishment for Jacobo's aggravated human trafficking offenses and his sex offenses committed against G.M., A.C., S.M., and Y.C. ( Jones , supra , 103 Cal.App.4th at p. 1143, 127 Cal.Rptr.2d 319.) The record shows that each of Jacobo's aggravated human trafficking offenses were committed at separate times (and at separate places) from the sex offenses he committed against G.M., A.C., S.M., and Y.C.
The trial court reasonably could infer that because of that temporal separation, Jacobo had the opportunity to reflect and form a new intent, or renew his intent, before subsequently committing the sex offenses against those four minors. ( Beamon , supra , 8 Cal.3d at p. 639, fn. 11, 105 Cal.Rptr. 681, 504 P.2d 905 ; Kwok , supra , 63 Cal.App.4th at p. 1253, 75 Cal.Rptr.2d 40 ; Gaio , supra , 81 Cal.App.4th at p. 935, 97 Cal.Rptr.2d 392 ; cf. People v. Hicks (2017) 17 Cal.App.5th 496, 515, 225 Cal.Rptr.3d 682 [§ 654 did not apply because of temporal separation between aggravated human trafficking offenses and subsequent sex offenses].) The court also reasonably could find that Jacobo's aggravated human trafficking offenses were merely preparatory to his subsequent sex offenses and were not incidental to or the means by which those sex offenses were accomplished. ( Alvarez , supra , 178 Cal.App.4th at p. 1006, 101 Cal.Rptr.3d 169.) Because the court reasonably could infer that Jacobo harbored multiple criminal intents and objectives independent of each other, we conclude section 654 does not bar punishment for both the aggravated human trafficking offenses he committed against the four minors and the sex offenses he committed against those four minors. ( Britt , supra , 32 Cal.4th at pp. 951-952, 12 Cal.Rptr.3d 66, 87 P.3d 812.) To the extent Jacobo cites evidence or inferences therefrom that would have supported a contrary conclusion, he misconstrues and/or misapplies the substantial evidence standard of review. ( Jones , supra , 103 Cal.App.4th at p. 1143, 127 Cal.Rptr.2d 319.)
*55 DISPOSITION
The defendant's convictions on counts 32, 44, 45, 46, 58, and 59 for sending harmful matter depicting a minor engaged in sexual conduct to a minor (§ 288.2, subd. (a)(1)) are reduced to convictions for sending harmful matter to a minor (§ 288.2, subd. (a)(2)). In all other respects, the judgment is affirmed. The matter is remanded to the superior court for resentencing on counts 32, 44, 45, 46, 58, and 59 consistent with this opinion.
WE CONCUR:
HUFFMAN, Acting P. J.
IRION, J.

All statutory references are to the Penal Code.

Although A.M. was then 13 years old, she told Marlissa that she was 16 years old.

At trial, five video recordings of Jacobo having sexual intercourse with S.M. were played for the jury. During one video recording, Jacobo told S.M., "[s]crew Marlissa," stating that he would rather come and see S.M.

The punishment for pandering under section 266i is increased when the acts described in subdivision (a) are committed with another person who is a minor under the age of 16. (§ 266i, subd. (b)(2).)

The jury was also instructed that "[p]andering requires that an intended act of prostitution be with someone other than the defendant."

Section 266 currently provides: "Every person who inveigles or entices any unmarried female, of previous chaste character, under the age of 18 years, into any house of ill fame, or of assignation, or elsewhere, for the purpose of prostitution, or to have illicit carnal connection with any man; and every person who aids or assists in such inveiglement or enticement; and every person who, by any false pretenses, false representation, or other fraudulent means, procures any female to have illicit carnal connection with any man , is punishable by imprisonment in the state prison, or by imprisonment in a county jail not exceeding one year, or by a fine not exceeding two thousand dollars ($2,000.00), or by both such fine and imprisonment." (Italics added.)

See footnote *, ante .

See footnote *, ante .