Filed 6/23/21  P. v. Marez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>CARLOS MAREZ,<br><br>　　　Defendant and Appellant. | B303215<br>(Los Angeles County<br>Super. Ct. No. BA463818) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Leslie A. Swain, Judge.  Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

Carlos Marez appeals from his convictions for attempted murder and shooting at an occupied vehicle, crimes the jury found were committed for the benefit of a criminal street gang. Appellant contends that there is insufficient evidence to support his convictions or the gang allegations. He also contends the trial court committed prejudicial statutory error by inadvertently omitting from a packet of written instructions given to the jury for use during its deliberations a self-defense instruction the court earlier read to jurors.

We reject appellant's contentions. The record contains substantial evidence that appellant aided and abetted both crimes with the intent to kill, and that he did so in order to benefit the criminal street gang to which he belonged. We also conclude that, although the trial court erred by failing to provide the written self-defense instruction, the error was harmless in light of substantial evidence that the crimes were not committed in self-defense and the court's oral instruction on self-defense.

## PROCEDURAL BACKGROUND

In August 2018, appellant was charged with attempted murder with premeditation and deliberation (Pen. Code,[1] §§ 664/187, subd. (a); count 1) and shooting at an occupied vehicle (§ 246; count 2). As to both crimes, it was alleged that appellant or a principal of the crime personally and intentionally discharged a firearm during the offense

---

[1]     Statutory references are to the Penal Code.

(§§ 12022.53, subds. (b), (c) & (e)(1))), and the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)).[2]

In November 2018, a jury found appellant guilty as to both counts, and found true the gang allegations as to each count. Appellant was subsequently sentenced to 15 years to life for count 1 and the gang allegations (§ 186.22, subd. (b)), plus five years for count 2, which was stayed (§ 654). Appellant filed this timely appeal.

## FACTUAL HISTORY

*The Shooting and Police Investigation*

On August 17, 2017, Christian Hernandez and about 10 others attended a family barbeque at his mother's home on East 3rd Street in Los Angeles. At about 11:45 p.m., Hernandez, his mother, girlfriend (Mayela Chavira), and his girlfriend's sister, were in the front yard cleaning up. Several children were present.

A small, dark car (later determined to be a blue Ford Escort that belonged to appellant) with two people inside drove up and stopped in the street in front of the home. A man wearing a dark sweatshirt and a hoodie covering his head got out of the passenger side and approached

---

[2] The amended information filed in August 2018 did not allege, as to count 2, that appellant was personally armed with a firearm, nor did it contain a gang allegation. The gang allegation as to count 2 was added November 6, 2018, after the court granted a prosecution motion to amend. The record does not contain a second amended information. However, based on the charging allegations read at the start of trial, and the subsequent verdicts, discrepancies appear to have been corrected to reflect the correct allegations against appellant identified above.

3

the house, pointing a gun at the people in the yard. Mayela said to Hernandez, "Be careful. He has a gun." The man asked Hernandez, "Where you from?" Hernandez told the man to put the gun away because kids were present. He also said they were "from nowhere," and that only "paisas" were there (by which he meant "just Mexicans" without gang connections).

The man ran back to appellant's Escort and got in on the passenger side. After herding his family indoors, Hernandez ran to his car, thinking he could use it to block the small car from coming near his family. Meanwhile, appellant's car had driven away on 3rd Street, then made a U-turn and returned to within 60 feet of Hernandez's car, at which point Hernandez's car and windshield were struck by at least one bullet.

Hernandez pulled his car from its parking spot and rammed it into the front of appellant's Escort, pushing it toward the sidewalk and forcing it to crash into a parked car, to ensure the car would not escape. At least three shots had been fired at Hernandez before he rammed appellant's car and numerous shots followed, for a total of up to 15 gunshots. Mayela testified that, after appellant's car returned, she saw the person who had earlier approached the house standing outside the car and shooting a rifle at Hernandez's car. After ramming appellant's car, Hernandez drove away about 10 miles, out of concern for his family. He did not see what happened to the people in the car. Meanwhile, two men from inside appellant's car ran off. Mayela's sister called 911.

4

When officers from the Los Angeles Police Department (LAPD) arrived, they found 10-12 bullet casings in the street, which had likely come from a small rifle or handgun. There was damage to the front end of the abandoned Escort, and the airbags had deployed. The vehicle had no bullet holes, nor were any bullet casings found inside it. From inside appellant's car, officers recovered a traffic ticket issued to appellant, a notebook and speaker (each containing gang writing), and two cell phones. Appellant's blood was found on the driver's side airbag. After obtaining a search warrant, the LAPD retrieved data from one cell phone which contained photos of appellant.

Hernandez did not return to his home on the night of the incident and avoided speaking to the LAPD for several days. By the time he met with police officers, Hernandez's car had been repaired. He shared with the LAPD photographs of his vehicle which had been taken before the repairs were done. The photos showed, among other things, several bullet holes in the lower part of Hernandez's windshield, and bullet holes in the hood, frame and engine of his car.

*Gang Evidence*

LAPD Officer Jesus Campos testified as a gang expert on behalf of the prosecution. Campos had received training regarding gangs and gang crimes and had personally had contact with 300-to-500 gang members. He testified that gang members seek to be feared and respected by members of the community and rival gang members. Gang members achieve the desired fear and respect by committing

crimes, including shootings. Campos testified that gang members ask, "where you from?" so civilians know they belong to gang and in order to ascertain whether someone is a member of a rival gang. There is no correct answer to this question. Even if the person confronted responds that he or she is "from nowhere," they will likely be assaulted.

Campos testified that, in August 2017, the "Tiny Boys" gang had about 90 documented members. The Tiny Boys gang is a criminal street gang that commits murder, vandalism, narcotics crimes, gun possessions and extortion, and its principal activities are shootings, murder, extortion, robberies and gun crimes. "TB" and "Chicago" are common symbols for the Tiny Boys gang, and its principal rivals are the Quatro Flats, Primera Flats and Breed Street gangs. The crimes at issue here took place in Quatro Flats' territory. Campos opined that appellant is an admitted member of Tiny Boys street gang and has several tattoos reflecting his membership in that gang. The notebook and a speaker recovered from appellant's car contained Tiny Boys' gang graffiti. Evidence admitted at trial included minute orders from March 20 and May 19, 2016, reflecting convictions of members of the Tiny Boys gang for robbery and the sale of illegal drugs, respectively.

In response to a hypothetical posed by the prosecution based on the facts of this case, Campos opined that the crime was committed for the gang's benefit, and that both the shooter and driver belonged to the same gang and had been putting in work doing "hood patrol" together.[3]

---

[3] "Putting in work" is a term commonly used to mean, committing crimes or assisting in the commission of crimes for the benefit of a street gang to bolster the status of the gang member and the gang, or to instill fear in the

In Campos' opinion, the crime committed would increase the status of individual gang members and also benefit the Tiny Boys gang by intimidating and instilling fear in the victims and members of the surrounding community, causing them to refrain from summoning police. In Campos' opinion, the use of the phrase, "Where you from," demonstrates the gang is active and that the driver and passenger were willing to put in work for the gang.

## DISCUSSION

I. *The Record Contains Sufficient Evidence to Support Appellant's Conviction as to Both Crimes and the Gang Allegations*

Appellant argues there is insufficient evidence to support his convictions for attempted premeditated murder and shooting at an occupied vehicle because the evidence demonstrates the shooter acted in self-defense. Moreover, he contends that even if the shooter had harbored an intent to kill, there is no substantial evidence that appellant knew of the shooter's intent and intended to aid and abet in the commission of either crime. Appellant is mistaken.

A. *The Standard of Review*

'"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most

---

community and rival gangs. (See, e.g., *People v. Gonzalez* (2021) 59 Cal.App.5th 643, 646; *People v. Franklin* (2016) 248 Cal.App.4th 938, 946.)

favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court ""presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."' [Citation.]' [Citation.]" (*People v. Morales* (2020) 10 Cal.5th 76, 88.) If believed by the jury, the testimony of a single witness is sufficient to uphold a judgment, even if that testimony is uncorroborated, contradicted, or inconsistent or false in other respects, unless the testimony is physically impossible or inherently improbable. (*People v. Elliott* (2012) 53 Cal.4th 535, 585; *People v. Panah* (2005) 35 Cal.4th 395, 489.) We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Jennings* (2010) 50 Cal.4th 616, 638 (*Jennings*); *People v. Jacobo* (2019) 37 Cal.App.5th 32, 42.) "'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.'" (*People v. Brown* (2014) 59 Cal.4th 86, 106.) The same principles apply to claims of insufficient evidence regarding gang allegations or enhancements. (See *People v. Leon* (2008) 161 Cal.App.4th 149, 161.)

B. *Controlling Law Regarding Aiding and Abetting, Attempted Murder, Shooting at an Occupied Vehicle, and Self-Defense*

The crime of attempted murder has two elements: (1) a specific intent to kill, and (2) the commission of a direct but ineffectual act toward accomplishing the attempted killing. (§§ 664/187; *People v. Canizales* (2019) 7 Cal.5th 591, 602.)

As the jury was instructed, aiding and abetting an attempted murder requires that the aider or abettor knew of the direct perpetrator's intent to commit the crime, intended that the perpetrator commit the crime, and the aider or abettor, by his words or actions in fact aided and abetted the perpetrator's commission of the crime. (CALCRIM Nos. 400, 401; *People v. Johnson* (2016) 62 Cal.4th 600, 639.)

The crime of shooting at an occupied vehicle requires the willful and malicious shooting of a firearm at an occupied vehicle where the shooter did not act in self-defense.[4] (§ 246; CALCRIM No. 965.) As the jury was instructed, in order to find that appellant aided and abetted a shooting at an occupied vehicle, it must find the required aiding and abetting, and also find that the perpetrator willfully and maliciously shot a firearm at an occupied vehicle. (CALCRIM No. 965.)

Self-defense or the defense of another are defenses to attempted murder and to shooting at an occupied vehicle. A perpetrator acts in lawful self-defense or defense of another if he reasonably believed he or

---

[4] As discussed below, the written instructions informed the jury that the prosecution was required to prove the perpetrator did not act in self-defense. (CALCRIM No. 965.) Here, the trial court did not read the self-defense element.

someone else was in imminent danger of suffering bodily injury, reasonably believed the immediate use of force was necessary to defend against danger and used no more force than necessary to defend against the perceived danger. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082; CALCRIM No. 3470.)

C. *Governing Law Regarding the Gang Allegations*

Section 186.22, subdivision (b)(1) provides for additional punishment of "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Two elements are required. First, the crime must be gang related. (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*); *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199 [the crime itself must have a connection with the gang's activities].) Not every crime committed by a gang member is gang related. However, where several gang members commit a crime together, a jury may reasonably infer that they committed the crime in association with the gang. (See *Albillar,* at p. 62.) An expert's testimony that a gang's reputation for viciousness is enhanced by the gang's criminal conduct is sufficient to raise the inference that the conduct was committed for the benefit of the gang. (*Id.* at p. 63.)

The second element relates to defendant's state of mind and requires that he have the specific intent to promote, further, or assist in criminal activity by other gang members. This prong is satisfied by an

10

evidentiary showing that the defendant intended to promote, further, or assist other gang members in any criminal conduct. (§ 186.22, subd. (b)(1); *Albillar, supra,* 51 Cal.4th at pp. 64–66.)

Our decision in *People v. Romero* (2006) 140 Cal.App.4th 15, 20 (*Romero*) is instructive. In *Romero*, the defendant picked up fellow gang members, one of whom was armed and said, "Let's go do this." (*Id.* at p. 17.) The defendant drove the group to a liquor store in rival gang territory where two men—neither of whom was a known gang member—stood outside. (*Ibid.*) Defendant's cohort aimed a rifle from the car window and fired three shots, killing one man. (*Ibid.*) Defendant was convicted of first-degree murder and attempted murder, and the jury found true the gang allegations. (*Id.* at pp. 17–18.)

In *Romero*, we rejected defendant's assertion that the evidence was insufficient to support the gang allegations. (*Romero, supra,* 140 Cal.App.4th at p. 18.) We observed that defendant was an active gang member, and the liquor store was located in rival gang territory. (*Id.* at p. 19.) The shooting would elevate the shooter's status within his gang whether or not the victims were gang members themselves, and the evidence created a reasonable inference that defendant specifically intended to further his co-gang member's criminal conduct. (*Id.* at p. 20.)

D. *Analysis*

Applying these principles here, we conclude the record contains sufficient evidence to support the jury's conclusion that the shooter

11

harbored an intent to kill and willfully and maliciously shot at Hernandez's occupied vehicle. And, as in *Romero, supra,* 140 Cal.App.4th 15, there was sufficient evidence to show that appellant was aware of the shooter's intent and had the specific intent to further his co-gang member's criminal conduct. (*Id*. at pp. 17–20.) The record also contains substantial evidence that the crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang, and were intended to promote and benefit the Tiny Boys gang. (*Ibid*.)

The jury could reasonably conclude that appellant drove the Escort involved in the incident: it was registered to him, a traffic ticket with his name on it was found inside the car, and his DNA was found on the driver's-side air bag that deployed at the scene. The evidence also supports a conclusion that appellant, an admitted gang member, aided a fellow armed gang member in a plan to confront and kill a rival gang member by driving the co-member into rival territory. Appellant remained close by in his car while the shooter approached the group gathered in front of the residence, questioned Hernandez about his gang status while pointing a gun at him, then returned to the passenger seat of appellant's car. Under these circumstances, it may reasonably be inferred that the conduct was undertaken in an effort to garner respect from rival gang members and/or civilians. (See *People v. Sanchez* (2016) 63 Cal.4th 411, 457 ["Because direct evidence of a defendant's intent rarely exists, intent may be inferred from the circumstances of the crime and the defendant's acts"].)

12

Appellant further aided the shooter by making a U-turn on 3rd street to provide a better vantage point from which to fire at Hernandez who, by then, was in his own parked car. The number of bullet holes in Hernandez's car (as many as 15) and their location demonstrated an intent to kill, given that most of the bullet holes were located on the driver's side of Hernandez's front windshield. "'"[T]he act of firing toward a victim at a close, but not point blank, range "in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill . . . ." [Citations.]"'" (*People v. Virgo* (2013) 222 Cal.App.4th 788, 798.) Moreover, Hernandez did not drive toward appellant's car until after the shooter had fired numerous times at him. Appellant's assertion that Hernandez's testimony lacked credibility is irrelevant. The jury accepted Hernandez's account and we do not reweigh witness credibility. (See *Jennings, supra,* 50 Cal.4th at p. 638.) Finally, the prosecution's gang expert testified that gang members commit crimes like the ones committed here, at least in part, to intimidate and instill fear in members of a community and deter them from calling the police. Taken together, the evidence is sufficient to support a conclusion that appellant intentionally assisted the shooter in the commission of the crimes against Hernandez (who was in rival gang territory), for the benefit of, at the direction of or in association with the criminal street gang to which both the shooter and appellant belonged.

We reject appellant's assertion that the evidence compels the conclusion that the shooter acted in self-defense. Hernandez did not

13

move his own car until after he had been fired upon.  That the shooting continued as Hernandez drove toward the shooter (who fired as many as 15 shots in all) suggests a continuation of the initial plan to kill Hernandez, not self-defense.

Finally, appellant's reliance on *People v. Albarran* (2007) 149 Cal.App.4th 214 (*Albarran*) is misplaced.  In *Albarran*, the appellate court concluded that admission of certain gang evidence was prejudicial error.  (*Id*. at pp. 217, 230–231.)  In *Albarran*, unlike here, there was no indication in the commission of a crime that the perpetrator had a gang-related motive.  (*Id*. at pp. 217–219.)  Moreover, the court reasoned that even if evidence of gang membership was relevant, other evidence (a threat to police officers, references to involvement of the Mexican Mafia and evidence identifying other gang members and unrelated crimes) was unduly prejudicial.  (*Id*. at pp. 229–231.)  Here, by contrast, the crimes occurred in rival gang territory after the shooter asked Hernandez, "Where you from?", a question commonly employed by gang members to instigate violence.  And, unlike *Albarran*, no unduly prejudicial evidence was introduced.

II.    *The Trial Court Erred in Failing to Provide the Jury a Written Copy of the Self-Defense Instruction it had Given Orally, but the Error Was Harmless*

Appellant argues that the trial court committed prejudicial statutory error by failing to include a copy of the self-defense instruction (CALCRIM No. 3470), which the court had given verbally to the jurors, in the jury's packet of written instructions.  We agree that

14

the court erred by inadvertently omitting the written instruction, but conclude the error was harmless.

A. *Pertinent Facts*

During its conference with counsel regarding jury instructions, the trial court stated it intended to give the self-defense instruction requested by appellant (CALCRIM No. 3470), and to instruct the jury that the right to self-defense may not be contrived (CALCRIM No. 3472). Both instructions were included when the trial court orally instructed the jury. As read, CALCRIM No. 3470 defined self-defense and defense of another, and informed the jury that "[t]he People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense or defense of another. If the People have not met this burden, you must find the defendant not guilty of attempted murder as charged in count 1 and shooting at an occupied vehicle as charged in count 2."[5] The court also orally instructed

---

[5] Specifically, the court orally instructed the jury that: "Self-defense is a defense to attempted murder as charged in count 1 and shooting at an occupied vehicle as charged in count 2. The defendant is not guilty of those crimes if he used force against the other person in lawful self-defense or defense of another. [¶] The defendant acted in lawful self-defense or defense of another if: [¶] Number 1, the defendant reasonably believed that he or someone else was in imminent danger of suffering bodily injury. . . . [¶] Number 2, the defendant reasonably believed that the immediate use of force was necessary to defend against that danger and; [¶] 3, the defendant used no more force than was necessary to defend against that danger. [¶] Belief in future harm is not sufficient no matter how great or how likely the harm is believed to be. [¶] The defendant must have believed there was an imminent danger of bodily injury to himself or someone else. Defendant's belief must have been reasonable and he must have acted because of that belief. [¶] The

15

pursuant to CALCRIM No. 3472: "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force."

When it read the instruction regarding shooting at an occupied vehicle (CALCRIM No. 965), the court omitted the element that the prosecution had the burden to prove the perpetrator did not act in self-defense, although, as noted above, that principle was included in the oral reading of CALCRIM 3470 ("[t]he People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense or defense of another. If the People have not met this burden, you must find the defendant not guilty."). The court

---

defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation. If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense or defense of another. [¶] When deciding whether the defendant's beliefs were reasonable, consider all of the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. [¶] If the defendant's belief [*sic*] were reasonable, the danger does not have to actually have existed. [¶] The defendant's belief that he was threatened may be reasonable even if he relied on information that was not true. However, the defendant must actually and reasonably have believed that the information was true. [¶] A defendant is not required to retreat. He or she is entitled to stand his or her grounds and defend himself or herself and if necessary, to pursue an assailant until the danger of death or bodily injury has passed. This is so even if safety could have been achieved by retreating. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense or defense of another. If the People have not met this burden, you must find the defendant not guilty of attempted murder as charged in count 1 and shooting at an occupied vehicle as charged in count 2."

16

informed the jurors that it would provide them a written copy of its instructions for use during their deliberations.

During closing argument, both sides addressed the issue whether the shooter had acted in self-defense. The prosecutor stated: "the perpetrator was not acting in self-defense . . . . I'm pretty sure that when [defense counsel] . . . gives his closing argument he's going to . . . [argue] that what really happened was that the shooter was defending the defendant from getting rammed by [Hernandez's car] and that's why the shooter shot at him so many times."

The prosecution argued that the evidence showed the shooting was not done in self-defense, and that Hernandez did not ram his car into appellant's until after the shooting began.

In his closing, defense counsel said his "argument [was] primarily focused on the question of intention . . . and did [appellant] intend the shooter to do what the shooter did? . . . [T]here is a self-defense instruction. . . . If the shooter was acting in self-defense or in defense of the people in the car, he's not guilty of a crime. If [the shooter was] not guilty of the crime, [appellant was] not guilty of the crime. The [prosecution] need[s] to prove beyond a reasonable doubt that . . . the shooter did not act in self-defense. [¶] I say this because the evidence . . . suggested that [the shooter] might have been acting in self-defense . . . or [in defense of] the car."

Before it began its deliberations, the jury was given a 36-page packet of written instructions. That packet included CALCRIM No. 3472 (the right to self-defense may not be contrived) and CALCRIM No.

17

965 (including the element that the prosecution had to prove that the perpetrator did not act in self-defense). However, the packet did not include CALCRIM No. 3470 defining self-defense or defense of another, even though the court had earlier read that instruction to the jury. The jury began deliberating at 10:15 a.m. and had reached its verdicts by 3:18 p.m. The jury did not pose any questions to the court regarding self-defense.[6]

## B. *The Court's Statutory Error Was Harmless*

The California Supreme Court has held that, while neither the state nor the federal Constitution guarantees a criminal defendant the right to delivery of written instructions in addition to oral instructions, such an omission constitutes statutory error. (*People v. Trinh* (2014) 59 Cal.4th 216, 234–235 (*Trinh*).) Section 1093, subdivision (f), provides that "[u]pon the jury retiring for deliberation, the court shall advise the jury of the availability of a written copy of the jury instructions. The court may, at its discretion, provide the jury with a copy of the written instructions given." However, as the California Supreme Court explained "[n]either the United States Supreme Court nor we have ever held that oral jury instructions are ineffectual unless augmented by written copies of the same instructions; to the contrary, we have established that neither the state nor the federal Constitution

---

[6]    The jury did pose two questions during its deliberations. One questioned what responsibility a lookout bore for actions taken by another, and whether a lookout had to be aware of the possibility of additional crimes. The second requested clarification regarding the gun allegation as to count 2.

guarantees a criminal defendant the delivery of written instructions in addition to oral ones." (*Id.* at p. 234.) "The failure to provide written instructions is not tantamount to giving no instructions at all." (*Ibid.*)

In *Trinh*, "the record reflect[ed] [that] counsel and the court intended the jury to receive a full set of instructions, and the omission of [two instructions] arose . . . because . . . the trial court inadvertently omitted them when compiling the written jury instructions. However unintentional, this omission deprived Trinh of his statutory right to have a written copy of [the] two instructions delivered to the jury." (*Trinh, supra*, 59 Cal.4th at p. 235.) Nevertheless, the Supreme Court concluded the error was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Ibid.*) The omitted instructions were given orally, the Court presumed jurors heard and followed them, and the record contained no indication that the jury was confused or failed to understand and apply the instructions read. Thus, the Court found there was no reasonable probability the defendant would have received a more favorable outcome had the jury been given written copies of the instructions at issue. (*Ibid.*)

Here, appellant maintains that the court's failure to include a written self-defense instruction in the jury's packet cannot be deemed harmless error, especially given that when the court read CALCRIM No. 965 defining the crime of shooting at an occupied vehicle, it omitted the element requiring the prosecution to prove that perpetrator had not acted in self-defense. He insists that "[h]ad the jury been properly instructed and provided with the written self-defense instruction, there

19

is a 'reasonable chance,' more than a mere abstract possibility, [he would have received] a more favorable result." Appellant is mistaken.

Here, the trial court orally instructed jurors pursuant to CALCRIM No. 3470 on the principles of self-defense and defense of another, that appellant could not be convicted if the charged crimes were committed in lawful self-defense, and that the prosecution had the burden of proving that the perpetrator did not act in self-defense. Appellant points to nothing in the written instructions the jury received that conflicts with the court's oral instruction. In addition, closing arguments made by both sides expressly reinforced the instruction regarding the prosecution's burden to negate self-defense. Further, the jury expressed no confusion regarding the concept of self-defense. The fact that the jury twice requested clarification on specific issues during its brief deliberations (see fn. 6, *ante*) is a strong indicator that, had the jury been confused as to the issue or concept of self-defense, it would have sought clarification. (See *People v. Seaton* (2001) 26 Cal.4th 598, 674 [failure to give written instructions was harmless where "[t]he jury expressed no inability to understand the instructions, and deliberated only a day before returning its verdict"].) Moreover, appellant's principal defense was not that the shooter acted in self-defense. Rather, defense counsel stressed that appellant was not aware of the shooter's intent, and thus had not intended to aid and abet either the attempted murder of Hernandez or the shooting at his vehicle. Finally, as discussed at length above, there is more than ample evidence to support the jury's finding of appellant's guilt.

Based on the weight of the evidence, the jury instructions given, arguments by counsel, and the absence of any indication the jury was confused or misled by the inadvertent omission of a written instruction on self-defense from its packet of written instructions, we conclude that the trial court's statutory error was harmless.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.