Filed 2/11/25  P. v. Burke CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082718 |
| v. | (Super.Ct.No. SWF2007290) |
| JONATHAN F. BURKE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Judge John M. Davis, Judge.  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Johnathan F. Burke lived with his girlfriend starting when his girlfriend's daughter, Jane Doe, was 11 or 12 years old. In 2019, defendant rubbed Doe's stomach and back, pinched her buttocks, and commented that he liked her jeans. In 2020, when Doe was 14 years old, defendant gave her a vibrator with directions on how to use it and offered to help her use it. Later that day, he entered her bedroom and slapped and squeezed her buttocks.

Defendant was convicted of two counts of lewd and lascivious acts against a child under the age of 14 and more than 10 years younger than him (Pen. Code, § 288, subd. (c)(1); counts 1 & 2). In addition, he was found guilty of misdemeanor annoying and molesting a child under the age of 18 (§ 647.6, subd. (a); count 3). Defendant was sentenced to two years, eight months to be served in state prison.

Defendant claims on appeal that his convictions for committing lewd and lascivious acts against Doe in counts 1 and 2, and annoying and molesting a child in count 3, were not supported by substantial evidence; the admission of a prior uncharged sexual act committed by defendant and involving Doe pursuant to Evidence Code sections 1101, subdivision (b), and 1108, was prejudicial error; the admission of Doe's statements to her mother under the fresh complaint doctrine was prejudicial error; and the imposition of concurrent sentences on counts 2 and 3 was improper under Penal Code section 654.

**FACTS**

A.     PROSECUTION CASE-IN-CHIEF

1.     *JANE DOE'S TESTIMONY*

Doe was 17 years old at the time of trial and had graduated from high school.  Her father was J.B. (Father) and her mother was K.D. (Mother).  Defendant was Mother's ex-boyfriend.  Doe was eight years old when defendant and Mother started dating.  Defendant moved in with them when she was 11 or 12 years old.  Doe had a friendly relationship with defendant.  Defendant and Mother had three children together.  Mother would discipline Doe if she got in trouble; defendant never disciplined her.  Doe would sometimes discuss crushes she had on boys with defendant beginning when she was in fifth grade.  She never talked about sex with defendant.  Doe did not discuss personal things with defendant, such as getting her period.  She spoke with Mother and Father about those personal things.  Doe did not see defendant as a father figure; he was more of a friend.  As she got older, she did not feel safe talking to defendant about boys as she thought he started to look at her in a different way.

Doe started to feel unsafe in eighth grade when she and defendant were in his car and he told her, "he had a dream about me, that we were playing around, fooling around, doing it, right?"  He told her, "You know what I'm talking about" and nodded to her.  She believed he meant they had sex based on how he looked at her and how he said, "doing it."  It was implied they had sex.  Doe was "very uncomfortable" when defendant told her about the dream.  She wanted to get out of the car and did not want to be near

3

defendant.[1]  Doe did not tell Mother because she was worried she would get in trouble. She also did not want to uproot their lives.  She believed at some point she did tell her grandmother.  Doe stopped telling defendant personal things about her after this incident because she did not feel comfortable with him.

While she was also in the seventh or eighth grade, Doe was in her bedroom and defendant came in.  Defendant gave her an electric toothbrush and told her that she could "use it as a masturbation vibrator."  Defendant told her that it was not "wrong" or "sinful."  Doe did not really understand what defendant was talking about; she was confused.  Doe kept the toothbrush in her room.

Doe indicated that the next incident occurred in December 2019 when she was in eighth grade and was 14 years old.  They were living in Temecula.  Doe and defendant were in the kitchen when defendant pinched her buttocks over her clothes.  He then put his whole hand and palm on her waist and stomach area.  He moved his hand to her back and moved it from right to left on her back.  He touched her for approximately five seconds.  He "lingered" on her body.  He said while touching her either "I like these jeans" or "Nice jeans."  He used a low voice in her ear.  This made her feel "disgusting." Mother was in the kitchen with them but was facing away from them.  Doe was also holding her baby sister.  Doe did not react or tell Mother because she did not want Mother to know what had happened.

---

[1]  On cross-examination, defendant's counsel asked Doe if defendant told her the content of the dream.  She responded, "He did," but did not provide the details.

In April 2020, when Doe was 14 years old, defendant approached Doe at their house and told her had a gift for her. He gave her a box that contained a vibrator. Defendant told her that it was a vibrator and told her to let him know if she needed help with it. She initially told him she did not want it. She felt it was not okay that he had tried to give it to her. She felt she was very young, and it was not something she was supposed to do. She felt violated and disgusted. She believed that defendant, based on his suggestive tone of voice, was offering to assist her with using it. Doe was afraid to tell Mother about the device because she did not want her to blame Doe for defendant giving her the device.

Doe went to her room but eventually went and found defendant in his office and agreed to take the vibrator. She wanted to show Mother what he had tried to give her. There were directions with the vibrator, which showed it should be attached to an erect penis. She took a shower and tried to use it. She then washed it. After her shower, she went to her room. Approximately 30 minutes later, she was lying on her stomach on her bed.[2] She was on her cellular telephone and did not see defendant enter her room. Defendant suddenly was by her bed on his knees, but she did not see how he got on his knees. She did not know if he fell. He slapped her buttocks hard with an open hand. He then twice grabbed her buttocks and squeezed. She did not feel good about him touching her and thought she did not "deserve" to be touched by him in that way. Defendant gave

---

[2] At oral argument, defendant's counsel argued that the incident in the bedroom where Doe stated defendant slapped and squeezed her buttocks occurred prior to her going to his room and asking for the vibrator. The record clearly provides that she obtained the vibrator before the incident in the bedroom.

her some roller skates, which he said were another gift for her.  She thanked him so he would leave.  After defendant left her room, she decided she needed to tell someone what was happening.

Doe texted her cousin.[3]  The text messages were shown to the jury.  Doe texted her cousin that her "mom's boyfriend" had been hitting on her and giving her stuff for masturbation.  She stated she felt "really uncomfortable."  Doe also stated that defendant was making her feel uncomfortable and he asked to help her with "the vibration thingy."

Later that day, while they were both upstairs and defendant was downstairs, Doe told Mother what had happened.  Doe only told her about the vibrator and defendant squeezing and touching her buttocks that day.  Doe gave the vibrator to Mother.  Mother told her she was going to call the police.  Doe called Father to pick her up because she wanted to get out of her house.  Doe was afraid that defendant would be angry with her.

Doe did not tell law enforcement officers she used the vibrator because she was embarrassed and Father was sitting next to her.  Doe did not think of defendant as a father and she believed that he could not discipline her.

### 2.    *OTHER WITNESSES*

Mother dated defendant until April 2020.  They had three children together.  They broke up after April 2020 because of the incidents involving Doe.  While Mother and defendant were dating, she advised him that Doe was her daughter and that she made the

---

**3**  Doe was not certain whether she texted her cousin before or after defendant came in her room and touched her buttocks.

ultimate decision of what went on with Doe, including discipline. If there were any issues, Mother would address them with Doe.

When Doe was 14 years old, around March 2019, she would need to be driven to Father's house. Doe would get upset if defendant was going to drive her. As of April 2020, Mother and defendant had not had sex in about one year and their relationship was rocky.

On April 19, 2020, Mother went with Does grandmother to the grocery store in the middle of the day. Defendant was at home with Doe and the other three children. Doe was in her room lying on her bed when Mother came back from the store. Later that evening, Doe approached Mother and seemed very nervous. Doe told Mother that defendant had given her a vibrator and explained to her he would teach her how to use it. Mother was "shocked." Doe was very upset. Doe also told Mother that defendant had slapped and grabbed her buttocks. Doe showed the vibrator to Mother, and Mother gave it to the police. Mother never gave defendant permission to give the vibrator to Doe. Several days later, Doe told Mother about the dream defendant told her he had about them having sex.

Prior to April 2020, Doe had told Father that defendant gave her an electric toothbrush for masturbation. Father was outraged and discussed with Doe disclosing the incident. Doe did not want to uproot the family so Father agreed not to say anything. Father became aware of the April 19, 2020, incident based on receiving copies of the text messages from Doe to her cousin. Father saw the text message where Doe stated that defendant was hitting on her and gave her stuff for masturbation. He also saw the

7

message that Doe stated defendant offered to help her use the vibrator. Father immediately called the police. Father spoke with law enforcement and then Doe called him to pick her up from the house in Temecula. Doe at that point told him that defendant had touched her on her buttocks and about the vibrator.

Riverside County Sheriff's Deputy Vega was on patrol in the Temecula area on April 20, 2020, when he received a call around 10:30 a.m. to respond to the home of Doe and Mother. He met with defendant, who advised Deputy Vega that he was 54 years old. Deputy Vega spoke with Doe on the telephone and she disclosed defendant had given her a vibrator and he had grabbed and squeezed her buttocks. Mother gave Deputy Vega the vibrator. The vibrator had a ring on one side and there were instructions with the vibrator that showed how to put it on a penis. Defendant was arrested. Doe told Deputy Vega that she had washed the vibrator. Doe also told him that she washed the electric toothbrush that defendant gave her.

B.     DEFENSE

Defendant testified on his own behalf. Defendant had been with Mother while Doe was growing up. Doe talked to defendant about boys. Defendant became concerned about a boy that Doe met online.

Defendant admitted to giving Doe a vibrator in April 2020. He was worried about her attraction to boys and he wanted to give her an alternative, independent way to manage her personal needs. Defendant claimed he got the idea from television and other articles that recommended giving vibrators to teenage girls to prevent pregnancy. Doe rejected the vibrator at first but then came to find him to get it. He told her if she had any

8

questions she could ask him. He never told her would help her use it. His intention in giving her the vibrator was not sexual; he intended to give it to her as a good parent.

Defendant claimed he accidentally slapped the back of Doe's leg when he tripped in her room chasing his toddlers. He did not slap or squeeze her buttocks. As for the discussion of his dream, Doe had been telling him about a dream she had and he just stated that he had a dream about her the prior night. He never told her they were having sex. He denied he had ever grabbed Doe's buttocks. He had only commented once that she looked nice but said nothing more. Defendant admitted to giving her the electric toothbrush for masturbation based on advice from a television show. He never told her what to do with it despite his intent to have her use it for masturbation. He expected that Doe would figure out how to use the toothbrush on her own despite her being only 12 years old. He was sexually attracted to adult women, not 14-year-old girls. At trial, he claimed he viewed Doe as his daughter.

Defendant had told Deputy Vega that he did not consider Doe as a daughter. He admitted he was not in charge of making decisions for Doe. He was not in charge of giving discipline to Doe. Defendant admitted to doing research on teenage sex drive and then gave the vibrator to Doe so that she could satisfy herself sexually. He expected her to read the instructions on the box to use it. Defendant told Deputy Vega that when he gave Doe the vibrator, he asked if she needed help and if she understood. He indicated that if Doe did have questions for him, he intended to tell her how much pressure to use and explain her anatomical positioning. Defendant never talked to Mother about giving

9

Doe the vibrator despite all of his research. He claimed not to have known the device he gave Doe was meant to fit on a penis.

## DISCUSSION

### A. INSUFFICIENT EVIDENCE

Defendant contends there was insufficient evidence presented to support his convictions of committing lewd and lascivious acts within the meaning of Penal Code section 288, subdivision (c)(1) in counts 1 and 2. He claims there was no evidence that the acts of touching in counts 1 and 2 were done with the intent of arousing, appealing to, or gratifying his or Doe's sexual desires within the meaning of Penal Code section 288, subdivision (c)(1). He also insists that there was insufficient evidence presented to support his conviction in count 3 of annoying and molesting a child under the age of 18 within the meaning of Penal Code section 647.6, subdivision (a)(1). He claims that 14-year-old Doe had "free choice" whether to accept the vibrator and the "record in this case does not . . . contain any expert or otherwise objective testimony concerning whether a normal person in modern America would 'unhesitatingly be irritated' if a stepparent or de facto stepparent gave a teenage child a vibrator designed to be used for masturbation." Defendant insists that a jury that finds the giving of a vibrator to a 14-year-old girl violates Penal Code section 647.6, subdivision (a)(1), is "prudish indeed."

"In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or special circumstance beyond a reasonable doubt. We review the entire record in the light most favorable to the

10

judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt.  [Citation.]  We neither reweigh the evidence nor reevaluate the credibility of witnesses.  [Citation.]  We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence.  [Citation.]  If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."  (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.)

"Reviewing the sufficiency of evidence, . . . , necessarily calls for analysis of the unique facts and inferences present in each case, and therefore comparisons between cases are of little value."  (*People v. Rundle* (2008) 43 Cal.4th 76, 137-138, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421.)  "Because we must draw all inferences in support of the judgment, [a] defendant bears an 'enormous burden' when challenging the sufficiency of the evidence."  (*People v. Vasco* (2005) 131 Cal.App.4th 137, 161.)

      1.    *COUNTS 1 AND 2*

Penal Code section 288, subdivision (a) provides in pertinent part, "a person who willfully and lewdly commits any lewd or lascivious act, . . . , upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison

11

for three, six, or eight years." Subdivision (c)(1) of Penal Code section 288 provides, "A person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year. In determining whether the person is at least 10 years older than the child, the difference in age shall be measured from the birth date of the person to the birth date of the child."

"[A] lewd and lascivious act can . . . involve 'any part' of the victim's body." (*People v. Martinez* (1995) 11 Cal.4th 434, 444.) "Conviction under the statute has never depended upon contact with the bare skin or 'private parts' of the defendant or the victim." (*Ibid.*) "[T]he lewd character of an activity cannot logically be determined separate and apart from the perpetrator's intent. It is common knowledge that children are routinely cuddled, disrobed, stroked, examined, and groomed as part of a normal and healthy upbringing. On the other hand, any of these intimate acts may also be undertaken for the purpose of sexual arousal. Thus, depending upon the actor's motivation, innocent or sexual, such behavior may fall within or without the protective purposes of section 288. As the vast majority of courts have long recognized, the only way to determine whether a particular touching is permitted or prohibited is by reference to the actor's intent as inferred from all the circumstances." (*Id.* at p. 450.) Relevant factors include the charged act, other acts of lewd conduct charged in the case, the relationship between

12

the parties, and any "coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection." (*Id.* at p. 445.)

As for count 1, the incident in the kitchen, Doe testified that defendant came up behind her and pinched her buttocks. He then took the palm of his hand and rubbed her waist, stomach, and moved back and forth on her back. In a low voice, he told her "nice jeans." She described the touching as lasting for five seconds and that he "lingered" on her body. Doe testified that this made her feel "disgusting."

Prior to this incident, defendant had given Doe the electric toothbrush and told her she could use it for masturbation. Doe and defendant had not previously discussed sex and defendant's actions made her feel uncomfortable. The jury could reasonably conclude that defendant's pinching of her buttocks and rubbing his hand on her stomach and back, while telling her he liked her jeans, was inappropriate touching that he did with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or Doe.

Defendant places the onus on Doe indicating that she could have told him to " 'Stop it,' " if it truly bothered her. Further, her claim that she did not tell Mother because she did not want to uproot her family was "contrived." He insists her late disclosure of the incident amounted to her not being offended by the incident. Further, the touching did not "seem out of line" and the words of praise with non-intimate touching could not be reasonably seen as sexually motivated. However, the evidence establishes that Doe was disgusted by defendant's touching of her and that his hands "lingered" on her while he told her in a low voice that she looked nice in her jeans. The

13

jury heard Doe's testimony and believed her version of what occurred in the kitchen.  On appeal, we do not "reweigh the evidence []or reevaluate the credibility of witnesses." (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.)  Substantial evidence supported the jury's finding as to count 1.

There was also strong evidence supporting count 2.  Prior to the incident in the bedroom, defendant had already given Doe an electric toothbrush and advised her to use it for masturbation, he had touched her in the kitchen and had 30 minutes prior, given her a vibrator that was designed to be placed on an erect penis.  Doe was lying on her stomach on her bed and defendant entered her room.  Although she did not see how defendant got down on his knees next to her bed, she was clear that he slapped her buttocks hard with an open hand.  He then twice grabbed her buttocks and squeezed.  She did not feel good about him touching her and thought she did not "deserve" to be touched by him.  Based on the incidents occurring prior to this act, the jury reasonably could conclude that defendant possessed the intent of arousing or appealing to his or Doe's sexual desires when he slapped and squeezed her buttocks.  Defendant is essentially asking this court to reassess the credibility of Doe and reweigh the evidence.  The jury properly found the evidence supported that the incident in the bedroom was a violation of Penal Code section 288, subdivision (c)(1), in count 2.

2. *COUNT 3*

There was also sufficient evidence to support his conviction of violating Penal Code section 647.6, subdivision (a).  "Every person who annoys or molests any child under 18 years of age shall be punished by a fine not exceeding five thousand dollars

14

($5,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment." (Pen. Code, § 647.6.) Penal Code section 647.6, subdivision (a)(1), requires "(1) conduct a ' "normal person would unhesitatingly be irritated by" ' [citations], and (2) conduct ' "motivated by an unnatural or abnormal sexual interest" ' in the victim." (*People v. Lopez* (1998) 19 Cal.4th 282, 289.) Penal Code section 647.6, subdivision (a)(1), "does not require a touching." (*Lopez*, at p. 289.) In determining whether "the defendant's conduct would unhesitatingly irritate or disturb a normal person, we employ an *objective* test not dependent on whether the child was in fact irritated or disturbed." (*Id.,* at p. 290; see also *In re L.O.* (2021) 67 Cal.App.5th 227, 242.)

Defendant argues that it was his parental right to give Doe the vibrator and that it was appropriate to give such a device to a 14-year-old girl. The jury was "prudish" by concluding that giving Doe the vibrator was motivated by an abnormal sexual interest in Doe. The device was given to her for the sole purpose of education, he was just being a good parent by giving her the vibrator to allow her to satisfy her own sexual desires, and it would not have been a crime if Mother had given it to her. Initially, defendant cites to Wikipedia as a source for his argument that giving a vibrator to a 14 year old by a parent or stepparent is an appropriate act but provides no legal authority for his contention. Even so, the problem with his argument is that defendant was never told he could take a parental role with Doe and was specifically advised by Mother not to take a parental role. Defendant never asked Mother if he could give Doe the device, and waited until she left the house to give it to Doe. Defendant clearly was concealing the device from Mother

15

and could not think that Mother would approve of him giving the vibrator to Doe. In fact, Mother was shocked when she discovered what defendant had done, and Father independently called the police once it was disclosed to him. The jury could reasonably conclude that concealing such a device from Mother and giving it to Doe, a 14-year-old girl who was not his daughter, was conduct that would disturb a normal person without hesitation.

Further, based on the type of device given to Doe, and the fact he offered to help her use it, showed that his intent was based on his abnormal sexual interest. Defendant obtained a device that was designed to be used on an erect penis, and not one that was intended solely for a woman. The vibrator contained directions on how to use it on an erect penis, along with pictures. Doe was clear that defendant offered to help with the device, which was designed to be used on an erect penis. This was sufficient evidence defendant was motivated by an abnormal sexual interest in Doe.

Based on all the evidence presented to the jury in this case, there was substantial evidence to support defendant's convictions of violating Penal Code sections 288, subdivision (c)(1), and 647.6.

B.      ADMISSION OF OTHER UNCHARGED ACT

Defendant contends the trial court erred by admitting evidence of the uncharged act of him telling Doe that he had a dream about them "doing it," which requires reversal of all three counts. Although two uncharged acts were admitted at trial—the dream incident and him giving Doe the toothbrush for masturbation—on appeal defendant only contends that the prior uncharged act of defendant telling Doe that he had a dream about

16

her and him was erroneous. Defendant insists that no context was given as to the statement by defendant. Further, defendant only said that they were "doing it" in the dream, which did not necessarily mean sex. There was no established sexual offense that a crime had been committed to allow its admission under Evidence Code section 1108. It also was irrelevant as it was not similar to the charged crimes within the meaning of Evidence Code section 1101, subdivision (b). Further, the act should have been excluded under Evidence Code section 352.

### 1. *ADDITIONAL FACTUAL BACKGROUND*

Prior to trial, the People filed a supplemental motion in limine seeking to admit evidence of defendant's other uncharged sexual offenses under Evidence Code section 1108. Defendant had committed other crimes of annoying or molesting a child within the meaning of Penal Code section 647.6. These crimes included telling Doe that he had a dream they were having sex, giving her "the base of a vibrating toothbrush [telling] her it was a 'toy' that she could use to masturbate," and barging into her room while she was naked. These prior crimes were admissible under Evidence Code section 1108 as propensity evidence. The evidence was also admissible under Evidence Code section 1101, subdivision (b), to show his intent, motive, and absence of mistake. Their admission did not violate Evidence Code section 352.

Defendant objected to the admission of the prior uncharged acts as character evidence pursuant to Evidence Code section 1101, subdivision (b), and as propensity evidence under Evidence Code section 1108. They were not admissible under Evidence Code section 1108 because the prior acts were not sexual offenses. Further, the evidence

17

was more prejudicial than probative under Evidence Code section 352. The evidence was inflammatory, would cause confusion, and an undue consumption of time.

The trial court addressed the admission of the prior uncharged conduct under Evidence Code section 1108. The trial court ruled that the statement about the dream was admissible. The trial court excluded the incident of defendant walking in on Doe while she was naked. Defendant's counsel did not object to the admission of the "vibrating toothbrush."

The prosecutor then requested that the trial court address the three incidents and their admissibility under Evidence Code section 1101, subdivision (b). All three incidents were admissible to show intent and lack of accident or mistake. The trial court found the dream and the "vibrating toothbrush" were admissible under Evidence Code section 1101, subdivision (b), but excluded the incident of defendant seeing Doe naked.

The jury was instructed "The People presented evidence that the defendant committed other acts, other offenses of annoying or molesting a child that were not charged in this case. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that the fact is more likely than not to be true. [¶] If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offenses, you may, but are not required to, consider that evidence for the limited purpose of deciding whether: [¶] A. The defendant acted

18

with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of himself or the child in this case, as required to prove the crime of lewd and lascivious act on a child of 14 or 15 years, as charged in Counts 1 and 2; or [¶] B. The defendant had a motive to commit the offenses alleged in this case; or [¶] C. The defendant's alleged actions were not the result of mistake or accident. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and the charged offenses. [¶] Do not consider this evidence for any other purpose except for the limited purpose stated in Jury Instruction Number 1191A: Evidence of uncharged sexual offense. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all of the other evidence. [¶] It is not sufficient by itself to prove that the defendant is guilty of lewd or lascivious acts on a child under 14 or 15 years or annoying or molesting a child. The People must still prove each charge beyond a reasonable doubt."

The jury was also instructed that if they found the uncharged offenses true by a preponderance of the evidence, ". . . you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and, based on that decision, also conclude that the defendant was likely to commit or did commit lewd or lascivious acts on a child age 14 or 15 and annoying or molesting the child, as charged here. If you conclude that the defendant committed these uncharged offenses, that conclusion is only one factor to consider along with all of the other evidence. [¶] It is not sufficient by itself to prove that the defendant is guilty of lewd or lascivious acts on a child 14 or 15 or annoying or molesting a child. The People must

19

still prove each charge beyond a reasonable doubt. [¶] Do not consider this evidence for any other purpose except for the limited purpose stated in Jury Instruction 375: Evidence of uncharged offense to prove identity, intent, common plan, et cetera."

2. *ANALYSIS*

"[E]vidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).)

However, "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1108, subd. (a).) Evidence Code section 1108 permits the admission of "evidence that the defendant committed other sexual offenses to prove his propensity to commit the charged sexual offenses." (*People v. Cottone* (2013) 57 Cal.4th 269, 281.)

20

Both Evidence Code sections 1101 and 1108 are subject to Evidence Code section 352. "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "Evidence is not inadmissible under [Evidence Code] section 352 unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights.' " (*People v. Holford* (2012) 203 Cal.App.4th 155, 167-168.)

We need not consider whether the trial court properly admitted the dream incident under Evidence Code section 1101 or 1108 as it is not reasonably probable the jury would have reached a more favorable result without the evidence. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see also *People v. Winkler* (2020) 56 Cal.App.5th 1102, 1164.) Defendant only claims as to prejudice that the case was based on his credibility and Doe's credibility and that adding the dream story "could have tilted" the "equally" balanced prosecution and defense cases in favor of the prosecution.

However, the jury was also advised that defendant had previously given Doe an electric toothbrush and told her she could use it for masturbation. This was much more inflammatory than the evidence that he had a dream about the two of them. Additionally, the jury was admonished it could not convict defendant of the current charged crimes based on the prior uncharged act. We presume the jury followed the instructions and found defendant guilty based on the evidence presented as to the current incidents.

21

(*People v. Wilson* (2023) 89 Cal.App.5th 1006, 1014 ["We 'presume' [jurors] generally understand and follow the instructions"].)

Finally, there was strong evidence to support defendant's convictions, as provided *ante*. Doe provided credible testimony that defendant committed the lewd and lascivious acts against her and committed the misdemeanor charge of annoying and molesting a child. Any conceivable error in admitting the evidence that defendant told Doe that he had a dream about her was harmless.

C.      FRESH COMPLAINT DOCTRINE

Defendant claims the trial court improperly allowed Mother to testify about Doe's statements to her pursuant to the fresh complaint doctrine as interpreted by *People v. Brown* (1994) 8 Cal.4th 746 (*Brown*).

1.     *ADDITIONAL FACTUAL BACKGROUND*

Prior to trial, the People filed a motion in limine to admit Doe's out-of-court statements to others under the fresh complaint doctrine. These statements included text messages to Doe's cousin and telling Mother that defendant slapped and squeezed her buttocks and gave her the vibrator after the April 19, 2020, incidents. Further, she made a statement to Father, which was admissible as a fresh complaint. Defendant objected to the evidence as hearsay. Defendant contended the statements by Doe to others could be admitted for a limited purpose and were limited to testimony of the name of the victim, the perpetrator, the date of the complaint, and the general nature of the allegation. The details were not admissible.

The parties argued the motions prior to trial. Defendant's counsel again argued that the details of what Doe disclosed could not be admitted under the fresh complaint doctrine and *Brown*. The trial court expressed concern that if the testimony was admitted and only described as Doe reported "sexual assault" it sounded worse than what actually was stated in the text messages. Defendant's counsel offered that the testimony be limited to stating that she reported something was sexual in nature. The prosecutor argued that it would be more confusing and misleading to not introduce the actual text messages. The text messages did not include significant details about the touching. The text message to her cousin only stated that she felt uncomfortable with Mother's boyfriend and that he gave her items for masturbation. She also stated she was afraid to tell Mother. Doe would testify to these statements and the text messages would corroborate her testimony. The trial court then stated, "I'm going to rule that we just let them in as they are, because I don't think—I don't know. Under 352 analysis, or whatever, it's not that harmful. And it's—any other wording that I can come up with is going to make the jury speculate in a way that might have them thinking worse thoughts than what [the texts] actually say. So I'm going to let them in."

The trial court later addressed the admission of Doe's statements to Mother. Defendant's counsel noted it was objecting under *Brown* to the admission of the content of the statements. The trial court found the evidence admissible under the fresh complaint doctrine.

The jury was instructed "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence for that purpose and for no other. [¶] Evidence admitted of the complaining witness' disclosure of the sexual assaults to others may be considered only for the limited purpose of establishing the fact of and the circumstances surrounding the disclosure, but not as proof of the truth of the content of the disclosure."

### 2. ANALYSIS

In *Brown*, the court held that under the fresh complaint doctrine, "evidence of the fact of, and the circumstances surrounding, an alleged victim's disclosure of the offense may be admitted in a criminal trial for nonhearsay purposes under generally applicable evidentiary principles, provided the evidence meets the ordinary standard of relevance." (*Brown*, *supra*, 8 Cal.4th at p. 763.) "[E]vidence of the victim's report or disclosure of the alleged offense should be limited to the fact of the making of the complaint and other circumstances material to this limited purpose. Caution in this regard is particularly important because, if the details of the victim's extrajudicial complaint are admitted into evidence, even with a proper limiting instruction, a jury may well find it difficult not to view these details as tending to prove the truth of the underlying charge of sexual assault [citation], thereby converting the victim's statement into a hearsay assertion." (*Ibid.*)

Here, this court need not determine if the trial court properly admitted Mother 's testimony as to Doe's statements as any conceivable error was harmless. "Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson* test: The reviewing court must ask whether it is reasonably probable the verdict

24

would have been more favorable to the defendant absent the error." (*People v. Partida* (2005) 37 Cal.4th 428, 439.)

Defendant does not claim that the text messages to her cousin wherein Doe stated defendant had been hitting on her, had given her the vibrator, and offered to help her with the vibrator, were improperly admitted. Further, defendant does not complain about the testimony from Father about the text messages and that Doe told him that defendant squeezed her buttocks and gave her the vibrator. Mother's testimony was merely cumulative to this other testimony.

Defendant insists that Mother's testimony was the only testimony that Doe disclosed that defendant told her about having sex with her in a dream. He insists such testimony was prejudicial. As stated, *ante*, the admission of this evidence was not prejudicial as the other uncharged act was more inflammatory. Further, the jury was instructed that it was not to consider that the disclosures made by Doe prior to trial were true. Again, we presume that the jurors followed the instructions. (*People v. Wilson*, *supra*, 89 Cal.App.5th at p. 1014.) Any conceivable error in admitting Mother's testimony about Doe's disclosures was harmless.

D.     PENAL CODE SECTION 654

Defendant contends that Penal Code section 654 required the trial court to stay the sentence on count 3, because both the offenses in counts 2 and 3 were committed with the same intent and objective on the same day.

1.     *ADDITIONAL FACTUAL BACKGROUND*

Defendant's counsel filed a sentencing memorandum prior to trial.  In his memorandum, he argued that Penal Code section 654 barred additional punishment on count 3 based on the crimes occurring on the same day.  Defendant's counsel argued that the trial court should stay the sentence on count 3.  At the time of sentencing, the trial court stated it had reviewed defendant's sentencing memorandum.  The trial court noted, based on the aggravating factors found true by the jury that the victim was vulnerable and defendant took advantage of a position of trust, that probation was not appropriate.  The trial court imposed a sentence of two years on count 1; it imposed a consecutive sentence of eight months on count 2; and, on count 3, it imposed a concurrent sentence of one year.  The trial court did not directly address Penal Code section 654.  It did state it chose not to impose concurrent sentences on counts 1 and 2 based on the seriousness of the crimes and the impact on Doe.

2.     *ANALYSIS*

Here, the trial court's imposition of concurrent sentences on counts 2 and 3 show it made an implied factual finding that the charges were not based on a single act or indivisible course of conduct.

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one

provision."[4] (§ 654, subd. (a).) "[U]nder section 654 'a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment.' [Citation.] Therefore, '[i]f the offenses were committed on different occasions, they may be punished separately.' [Citation.] 'This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken.' " (*People v. Jacobo* (2019) 37 Cal.App.5th 32, 53.)

" 'In the absence of any reference to . . . section 654 during sentencing, the fact that the court did not stay the sentence on any count is generally deemed to reflect an implicit determination that each crime had a separate objective.' [Citation.] 'A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence.' " (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 94.)

Even if we were to conclude that defendant had the same objective in committing counts 2 and 3, the evidence supports concurrent sentences on these counts. Doe testified that she took the vibrator from defendant and took a shower. It was not until 30 minutes later, while she was lying on her bed, that defendant entered her room, and slapped and grabbed her buttocks. Defendant had ample time to reflect and renew his intent before entering Doe's bedroom. Defendant did not have to give Doe the vibrator in order to

---

**4** Penal Code section 654 was amended after sentencing but does not change the resolution on appeal.

complete the crime of squeezing and slapping Doe's buttocks. Both crimes were separate and divisible acts. The trial court properly imposed concurrent sentences on counts 2 and 3.

## DISPOSITION

The judgment is affirmed in full.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.